# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x

CHRISTOPHER ROLLINS,

                          Plaintiff,

            v.

GOLDMAN SACHS & CO. LLC,
GOLDMAN SACHS GROUP, INC.,
GOLDMAN SACHS INTERNATIONAL,
GOLDMAN SACHS SERVICES
LIMITED, and JAMES P. ESPOSITO,

                       Defendants.

------------------------------------------------------ x

18 Civ. 7162 (ER) (GWG)

**ORAL ARGUMENT REQUESTED**

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND STAY PROCEEDINGS OR, IN THE ALTERNATIVE,
<u>TO DISMISS THE AMENDED COMPLAINT</u>**

 

Theodore O. Rogers, Jr.
Matthew J. Porpora
Kate L. Doniger
Jacob G. Singer
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
(212) 558-4000
*Attorneys for Defendants*

October 25, 2018

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND .......................................................................................................4

I.      Plaintiff's Employment and Work in the United Kingdom. ...............................................4

II.     Plaintiff's Misconduct and the U.K. Investigation, Hearing and Termination
Decision. .........................................................................................................................5

ARGUMENT ..............................................................................................................................10

I.      The Court Should Compel Arbitration of Plaintiff's Claims in Accordance with
the Arbitration Provision in His Managing Director Agreement ......................................10

      A.      Legal Standard. ...............................................................................................10

      B.      Plaintiff Agreed To Arbitrate Any and All Employment-Related Claims. ...........11

      C.      Plaintiff's Arbitration Provision Is Plainly Enforceable as to His SEC
Dodd Frank, Fraudulent Inducement, and Defamation Claims. ...........................12

      D.      Plaintiff's Insubstantial CFTC Claim Should Be Stayed Pending
Arbitration. ....................................................................................................12

II.     Should the Court Not Stay Proceedings, the Court Should Dismiss Plaintiff's
Amended Complaint for Failure To State a Claim. ..........................................................13

      A.      Legal Standard. ...............................................................................................14

      B.      Plaintiff's SEC and CFTC Claims Should Be Dismissed Because Dodd
Frank Does Not Apply Extraterritorially. ...........................................................14

      C.      Plaintiff Fails To State Claims Under Either the SEC or CFTC Anti-
Retaliation Provisions of the Dodd Frank Act. ...................................................16

            1.      Plaintiff's CFTC Claims Must Be Dismissed Because Plaintiff
Fails Plausibly To Allege that Those Acts Occurred "Because Of"
His Report to the CFTC. .....................................................................16

            2.      Plaintiff's CFTC and SEC Dodd Frank Claims Must Be Dismissed
as to All Alleged Adverse Actions that Occurred *Before* His
External Reports Were Made. ..............................................................19

            3.      Plaintiff's SEC Claim Must Be Dismissed as to All Other Alleged
Acts of Retaliation Because Plaintiff Fails Plausibly To Allege that
Those Acts Occurred "Because Of" Any Protected *Report*......................20

      D.      The Dodd Frank Claims Should be Dismissed as to Esposito and GSSL. ............21

      E.      Plaintiff's Claims for Fraudulent Inducement and Defamation Should Be
Dismissed.......................................................................................................22

1.    Plaintiff Has Not Alleged Any Misrepresentation of Material Fact
      or that He Relied on Any Such Misrepresentation to His Injury. ............. 22

2.    Plaintiff Has Failed To Plead Facts Sufficient To Overcome
      Qualified Privilege Over Employment Reference Letters. ...................... 24

CONCLUSION ................................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apionishev* v. *Columbia Univ. in City of N.Y.*,
  2012 WL 208998 (S.D.N.Y. Jan. 23, 2012) ........................................................................24

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009).........................................................................................................14, 18

*AT & T Techs., Inc.* v. *Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)................................................................................................................11

*Baldwin* v. *Goddard Riverside Cmty. Ctr.*,
  53 F. Supp. 3d 655 (S.D.N.Y. 2014).................................................................................18, 21

*Barr* v. *Sullivan*,
  2009 WL 4030826 (S.D.N.Y. Nov. 20, 2009) ........................................................................12

*Bell Atl. Corp.* v. *Twombly*,
  550 U.S. 544 (2007)................................................................................................................14

*Chatziplis* v. *PriceWaterhouseCoopers LLP*,
  2018 WL 3323820 (S.D.N.Y. July 6, 2018) (Ramos, J.)...................................................10, 11

*Citigroup Glob. Mkts. Inc.* v. *Preis*,
  2015 WL 1782135 (S.D.N.Y. Apr. 24, 2015) .........................................................................12

*Clark Cnty. Sch. Dist.* v. *Breeden*,
  532 U.S. 268 (2001)................................................................................................................21

*Cohen* v. *Avanade, Inc.*,
  874 F. Supp. 2d 315 (S.D.N.Y. 2012).....................................................................................23

*Daly* v. *Citigroup Inc.*,
  2018 WL 741414 (S.D.N.Y. Feb. 8, 2018)..............................................................................12

*Digital Realty Trust, Inc.* v. *Somers*,
  138 S. Ct. 767 (2018)......................................................................................................3, 19, 20

*EEOC* v. *Abercrombie & Fitch Stores, Inc.*,
  135 S. Ct. 2808 (2015)............................................................................................................17

*Epic Systems Corp.* v. *Lewis*,
  138 S. Ct. 1612 (2018)............................................................................................................11

*Forest* v. *N.Y. State Office of Mental Health*,
  2015 WL 6965149 (S.D.N.Y. Nov. 10, 2015) .........................................................................21

*Garcia* v. *Kings Cty. Hosp. Ctr.*,
  2018 WL 389212 (S.D.N.Y. Jan. 11, 2018) (Ramos, J.) .................................................14, 21

*Genesco, Inc.* v. *T. Kakiuchi & Co. Ltd.*,
  815 F.2d 840 (2d Cir. 1987).................................................................................................13

*Great Lengths Universal Hair Extensions S.r.L.* v. *Gold*,
  2017 WL 1731184 (S.D.N.Y. Mar. 29, 2017) .......................................................................12

*Guyden* v. *Aetna, Inc.*,
  544 F.3d 376 (2d Cir. 2008)..................................................................................................11

*In re Am. Express Fin. Advisors Secs. Litig.*,
  672 F.3d 113 (2d Cir. 2011)..................................................................................................10

*Johnson* v. *AmeriGas Propane, L.P.*,
  2018 WL 2304742 (N.D.N.Y. May 21, 2018).......................................................................19

*Katsoris* v. *WME IMG, LLC*,
  237 F. Supp. 3d 92 (S.D.N.Y. 2017).....................................................................................13

*Katz* v. *Cellco P'ship*,
  794 F.3d 341 (2d Cir. 2015)..................................................................................................10

*K.D. ex rel. Duncan* v. *White Plains Sch. Dist.*,
  921 F. Supp. 2d 197 (S.D.N.Y. 2013) (Ramos, J.) ...............................................................22

*Lankau* v. *Luxoft Holding, Inc.*,
  266 F. Supp. 3d 666 (S.D.N.Y. 2017)...................................................................................23

*Lawrence* v. *Int'l Bus. Mach. Corp.*,
  2017 WL 3278917 (S.D.N.Y. Aug. 1, 2017).....................................................16, 17, 20, 22

*Liu Meng-Lin* v. *Siemens AG*,
  763 F.3d 175 (2d Cir. 2014)............................................................................................14, 15

*Meyer* v. *Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)....................................................................................................12

*Morrison* v. *Nat'l Austl. Bank Ltd.*,
  561 U.S. 247 (2010)...............................................................................................................15

*Murray* v. *UBS Secs., LLC*,
  2014 WL 285093 (S.D.N.Y. Jan. 27, 2014) .........................................................................12

*Nielsen* v. *Rabin*,
    746 F.3d 58 (2d Cir. 2014)............................................................................................14

*Norcom Elecs. Corp.* v. *CIM USA Inc.*,
    104 F. Supp. 2d 198 (S.D.N.Y. 2000)........................................................................3, 13

*Orenstein* v. *Figel*,
    677 F. Supp. 2d 706 (S.D.N.Y. 2009)............................................................................25

*Parisi* v. *Goldman Sachs & Co.*,
    710 F.3d 483 (2d Cir. 2013)..........................................................................................11

*Price* v. *UBS Fin. Secs., Inc.*,
    2018 WL 1885669 (D.N.J. Apr. 19, 2018) ...................................................................19

*Ralph Lauren Corp.* v. *U.S. Polo Ass'n, Inc.*,
    2014 WL 4377852 (S.D.N.Y. Sept. 4, 2014)................................................................12

*Renxiong Huang* v. *Minghui.org*,
    2018 WL 3579103 (S.D.N.Y. July 25, 2018) (Ramos, J.).............................................22

*Rothman* v. *Gregor*,
    220 F.3d 81 (2d Cir. 2000)..............................................................................................2

*Schlenger* v. *Fid. Emp'r Servs. Co., LLC*,
    785 F. Supp. 2d 317 (S.D.N.Y. 2011)............................................................................23

*Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).........................................................................................................2

*Ulrich* v. *Moody's Corp.*,
    2014 WL 4977562 (S.D.N.Y. Sept. 30, 2014)........................................................14, 15

*Ulrich* v. *Moody's Corp.*,
    721 F. App'x 17 (2d Cir. 2018) .................................................................................14, 15

*Winter Inv'rs, LLC* v. *Panzer*,
    2015 WL 5052563 (S.D.N.Y. Aug. 27, 2015).................................................................13

## Statutes and Rules

7 U.S.C. § 26(a)(6)....................................................................................................................19

7 U.S.C. § 26(h)(1)(A).........................................................................................................16, 21

9 U.S.C. § 3................................................................................................................................10

15 U.S.C. § 78u-6(a)(6) ........................................................................................................19

15 U.S.C. § 78u-6(h)(1) .......................................................................................3, 14, 17, 21

**Other Authorities**

FCA Handbook, SUP 10A.15.1 ...................................................................................9, 18, 25

FCA Handbook, SUP 10C.16.1 ...................................................................................9, 18, 25

PRA Rulebook, PRA2016/15 ......................................................................................9, 18, 25

S. Rep. 111-176 (2010).............................................................................................................19

Whistleblower Incenvites and Protection,
       76 Fed. Reg. 53,172 (Aug. 25, 2011).....................................................................16

Defendants The Goldman Sachs Group, Inc. ("GS Group"), Goldman Sachs & Co. LLC ("GSCO"), Goldman Sachs International ("GSI"), Goldman Sachs Services Limited ("GSSL") (collectively, "Goldman Sachs" or the "firm"), and James P. Esposito ("Esposito") (together, with Goldman Sachs, "Defendants") respectfully submit this memorandum of law in support of their motion to compel arbitration and stay proceedings pursuant to Section 3 of the Federal Arbitration Act and the Court's discretion or, in the alternative, to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Christopher Rollins ("Rollins"), a United Kingdom-based Managing Director employed by GSI, was discharged after a United Kingdom disciplinary process concluded that Rollins had committed very serious errors in judgment.  The disciplinary officer's November 2016 decision was issued following a hearing conducted under United Kingdom employment law procedures, at which Rollins appeared and had an opportunity to be heard after having been interviewed and shown records of the firm's extensive investigation into his conduct.  Now, nearly two years after these events in the United Kingdom, Rollins has brought an action in this Court, styling himself a "whistleblower" (despite that it was the firm that investigated *him*) in a transparent attempt to manufacture a retaliation claim that could conceivably be heard by this Court.  Plaintiff's efforts fail for a number of independent reasons.

*First*, Rollins is a party to a valid and enforceable arbitration agreement that precludes his attempt to assert claims here.  In 2010, upon being promoted to Managing Director effective January 1, 2011, Plaintiff signed an agreement with the firm committing that, "to the fullest extent permitted by law, any dispute, controversy or claim arising out of . . . Employment

Related Matters will be finally settled by arbitration."  (Rogers Decl., Ex. A ¶ 8.1.[1])  In that agreement, Plaintiff explicitly affirmed that he understood and acknowledged that he was "agreeing to arbitrate all [such claims] in accordance with the arbitration procedure set forth" in the arbitration agreement.  (*Id.* ¶ 8.2.)  And Plaintiff subsequently reaffirmed his commitment to arbitrate on September 22, 2016, when he agreed to transfer his employment to the United Kingdom and signed an employment agreement to that effect.  (*Id.*, Ex. B at 6-7 ¶¶ 8.1, 8.2.)

Three of Plaintiff's four claims—his claim brought under Dodd Frank's SEC anti-retaliation provision (Am. Compl. ¶¶ 119-129[2]) (the "SEC claim"), his fraudulent inducement claim (*id*. ¶¶ 130-137), and his defamation claim (*id*. ¶¶ 138-146)—are indisputably arbitrable, as confirmed by numerous prior decisions of the United States Supreme Court and within this Circuit.  And to the extent that Rollins' fourth claim, strategically brought under Dodd Frank's CFTC anti-retaliation provision (*id*. ¶ 103-118) (the "CFTC claim") in an effort to avoid arbitration, may not be arbitrable, it is clearly the tail that should abide disposition of the main issues, particularly because it is insubstantial and legally meritless.  Courts routinely stay non-arbitrable claims pending arbitration of the predominate claims in these circumstances.  "Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the

---

[1] All citations to "Rogers Decl., Ex. _" refer to the accompanying Declaration of Theodore O. Rogers, Jr. and exhibits attached thereto, all of which were referred to in the Amended Complaint.  In deciding a motion to dismiss, the Court may consider documents "incorporated into the complaint by reference," *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), or "that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit," *Rothman* v. *Gregor*, 220 F.3d 81, 88 (2d Cir. 2000).  There is no similar limitation on the documents a court can review in connection with a motion to compel arbitration.

[2] All citations to "Am. Compl." refer to the Amended Complaint, filed on September 27, 2018 (ECF No. 17).

nonarbitrable claims are of questionable merit." *Norcom Elecs. Corp.* v. *CIM USA Inc.*, 104 F. Supp. 2d 198, 207 (S.D.N.Y. 2000).

      *Second*, Plaintiff's claims are defective as a matter of law and to the extent that the Court were to decline to defer to the arbitral process, they should be dismissed.  The Dodd Frank Act does not apply extraterritorially, and the alleged adverse actions set forth in the Amended Complaint—including the termination of Rollins' U.K. employment in the United Kingdom pursuant to U.K. procedures—center on events that occurred abroad.  Further, Plaintiff's CFTC claim fails because the Amended Complaint does not allege any adverse action by Defendants "because of" a CFTC complaint, as the statute requires.  The CFTC and SEC claims are defective for the additional reason that the principal adverse actions that Rollins alleges—namely, the firm's investigation, his termination, and the firm's filing of regulatory reports—all took place *before* he reported to the CFTC or the SEC and, as the Supreme Court expressly held in *Digital Realty Trust, Inc.* v. *Somers*, the anti-retaliation provisions of Dodd Frank apply only to actions after a report has been made to an applicable U.S. regulator.  138 S. Ct. 767, 778 (2018).  And to the extent Rollins tries to rely on actions that took place after his alleged reports to regulators, those actions merely implemented decisions pre-dating the reports and thus Plaintiff has failed plausibly to allege that any Defendant took those actions "because of" any of his alleged internal or external reporting.  15 U.S.C. § 78u-6(h)(1)(A).

      Finally, although this Court has discretion to dismiss the common law claims for lack of pendent jurisdiction once the federal Dodd Frank Act claims are dismissed, they also are defective as a matter of law and can be dismissed outright.  Plaintiff's fraudulent inducement claim fails because Plaintiff has not pleaded that any Defendant made a misrepresentation of material fact or that Plaintiff relied on any such misrepresentation to his detriment, and

Plaintiff's defamation claim fails because Plaintiff does not, and cannot, overcome the qualified privilege that attaches to regulatory reference letters of the sort on which the claim is based.

## FACTUAL BACKGROUND

### I.   PLAINTIFF'S EMPLOYMENT AND WORK IN THE UNITED KINGDOM.

Plaintiff Christopher Rollins was employed within GSCO's Securities Division beginning in 2000.  (Am. Compl. ¶ 33.)  Effective January 1, 2011, he was promoted to Managing Director.  (*Id.*; Rogers Decl., Ex. A.)  In connection with his promotion, Plaintiff executed a Managing Director Agreement.  (*See* Rogers Decl., Ex. A.)  The Managing Director Agreement contained an arbitration provision (the "Arbitration Provision"), in which Plaintiff committed to arbitrate disputes with Goldman Sachs arising out of Plaintiff's employment:

> Subject to Section 9 below, and ***to the fullest extent permitted by law, any dispute, controversy or claim arising out of or based upon or relating to Employment Related Matters***[3] ***will be finally settled by arbitration*** in New York City before, and in accordance with the rules then obtaining of, the Financial Industry Regulatory Authority ("FINRA").

(*Id.* ¶ 8.1 (emphasis added).)  In signing the Managing Director Agreement, Rollins confirmed that he "underst[ood] and acknowledge[d] that [he was] agreeing to arbitrate all claims described above, in accordance with the arbitration procedure set forth above."  (*Id.* ¶ 8.2.)

In 2013, Plaintiff accepted a three-year assignment to work in London, which commenced in July of that year and was scheduled to conclude on August 31, 2016.  (Am.

---

[3] "Employment Related Matters" are defined as "matters arising out of or relating to or concerning the Employment Documentation, your hire by or employment with the Firm or the termination thereof, or otherwise concerning any rights, obligations or other aspects of your employment relationship in respect of the Firm."  (Rogers Decl., Ex. A ¶ 10.1.)  The term "Firm" is broadly defined to include GS Group and "its subsidiaries and affiliates, and its and their predecessors and successors."  (*Id.* at 1.)

Compl. ¶¶ 33, 55 and n.3.)   During this temporary London assignment, Plaintiff remained a GSCO employee but was assigned to GSSL for purposes of employment logistics and benefits. (*Id.* ¶ 33 and n.3.)   As Plaintiff acknowledges, at the end of his three-year assignment he agreed that, rather than return to New York, he would become employed in London on a long-term basis, for Goldman Sachs' U.K. affiliate GSI.  (*Id.* ¶¶ 55, 56.)   Accordingly, GSI sent Rollins its employment agreement for American Managing Directors being transferred to GSI.  (*Id.*)

Plaintiff's GSI employment agreement, dated September 6, 2016, was an integrated agreement consisting of four elements.  (*See* Rogers Decl., Ex. B.)  The first was the cover agreement, signed by Rollins, confirming that Plaintiff's employment with GSI began effective September 1, 2016 and describing that the agreement, together with the three documents attached and incorporated by reference therein, "represent the entire understanding of the parties with respect to the matters set forth therein."  (*Id.* at 1.)  The first attachment was Plaintiff's original, GSCO Managing Director Agreement, which contained the Arbitration Provision and an addendum to the Agreement.  (*Id.* at 2-11.)  The second attachment was a memorandum providing information confirming U.K. benefits and other terms of employment. (*Id.* at 12-13.)  The final attachment, titled "Statement of Terms and Conditions of Employment in the United Kingdom," was also referred to as the GSI "Annex to the Managing Director Agreement," customizing it to and supplementing it with United Kingdom standards.  (*Id.* at 14-16.)  Plaintiff executed the GSI employment agreement on September 22, 2016.  (*Id.* at 1.)

## II.   PLAINTIFF'S MISCONDUCT AND THE U.K. INVESTIGATION, HEARING AND TERMINATION DECISION.

On or around July 18, 2016, Plaintiff, who had then been working in the United Kingdom for almost three years, was contacted by an individual referred to in the Amended

Complaint as the "Financier" regarding a proposed sale of a stake in "Company A," owned by the Financier's Fund.  (Am. Compl. ¶ 41.)  Plaintiff alleges that, "for reasons unknown" to him, Goldman Sachs' Firmwide Commitment Committee initially would not approve the transaction but ultimately "greenlit" it.[4]  Separately, two weeks later, on August 3, 2016, the Financier contacted Plaintiff in London regarding a new set of potential trades in the securities of "Company B."  (Am. Compl. ¶¶ 47, 48.)  The Financier said he would be "making introductions," which according to the Amended Complaint Plaintiff "knew . . . had the potential to be improperly pre-arranged trades."  (*Id.* ¶ 48.)  Although he was admittedly aware of Goldman Sachs' concerns regarding the Financier and that the proposed trades raised red flags, Plaintiff alleges only that he consulted with a divisional employee in Goldman Sachs' Compliance Division.  (*Id.* ¶ 49.)  Plaintiff did not discuss the transactions with the Financial Crime Compliance group ("FCC") or other senior management, and he did not make the Compliance Division employee aware of the fact that the Financier, who had arranged the trades, was subject to FCC and senior management restrictions.  (Rogers Decl., Ex. C at 1.)

Between August 3 and 18, 2016, Plaintiff helped arrange the execution of eight trades in Company B securities that were introduced by the Financier.  (Am. Compl. ¶ 50.) Shortly thereafter, one of the parties to these transactions failed to settle on a number of its

---

[4] Plaintiff himself recognizes that Goldman Sachs has maintained that—prior to the Company A transaction—the Financier was subject to compliance restrictions and that Plaintiff was aware of them.  (*See, e.g.*, Am. Compl. ¶ 63 (quoting GS legal personnel as saying that, "following enhanced due diligence[,] the Financial Crime Compliance team had imposed restrictions on engaging with the Financier," and as saying that these restrictions were explained to Plaintiff in May 2016, some two months before the Company A transaction).)  Plaintiff also alleges that these compliance restrictions "did not exist."  (Am. Compl. ¶ 17.)  That allegation is patently false.  But even if the Court were to accept it as true for purposes of deciding this motion, it does nothing to salvage Plaintiff's legally deficient claims.

trades.  (*Id.* ¶ 51.)  According to the Amended Complaint, Goldman Sachs learned that the settlement failures resulted from side-deals that the Financier had breached with third parties. (*Id.* ¶ 53.)  Goldman Sachs promptly commenced an investigation into the matter, including Plaintiff's role in it.

On September 26 and 30, 2016, Goldman Sachs interviewed Plaintiff as part of its investigation, and Plaintiff's employment was suspended while the investigation continued.  (*Id.* ¶¶ 57, 58.)  Goldman Sachs interviewed Plaintiff again on October 11 and 12, 2016.  (*Id.* ¶ 67.) At the conclusion of the investigation, GSI initiated a disciplinary hearing and Defendant James Esposito was appointed hearing officer.  (*Id.* ¶ 70.)  The disciplinary hearing and appointment of a hearing officer were mandated by U.K. employment law, which was applicable to Rollins' employment with GSI.  Before the hearing, GSI provided Plaintiff with hundreds of pages of information concerning the investigation, including an investigative report, interview summaries, and records of Plaintiff's communications with the Financier.  (*Id.* ¶¶ 71, 72.)

The disciplinary hearing was held on October 27, 2016.  (*Id.* ¶ 76.)  Plaintiff had an opportunity to defend his conduct, including by submitting documents, "walk[ing] Esposito through the Company B trades," and "respond[ing] to specific allegations against him."  (*Id.* ¶¶ 77-79.)  On November 7, 2016, Esposito issued a written decision, a copy of which was provided to Plaintiff the next day.  (*Id.* ¶ 83.)  Esposito took into consideration Plaintiff's statements during the disciplinary hearing, as well as several communications that Plaintiff transmitted before and after the hearing.  (Rogers Decl., Ex. C at 1.)  He concluded that Plaintiff's "misconduct was sufficiently serious to warrant the termination of [his] employment with the firm," explaining that

> in my view your conduct in entering into the [Company B] trades
> involved a number of very serious errors of judgement.  You had
> had an ongoing dialogue with FCC in connection with the
> attempted onboarding of [the Financier's Fund] and you
> understood the nature of the FCC concerns about doing business
> with [the Financier] and/or [the Fund].  You also understood the
> exceptional nature of the [Company A] transaction and the senior
> management approvals that had been required to execute it.  You
> were also aware of the degree of [the Fund's] interest in [Company
> B] and [the Financier's] level of involvement in arranging the
> [Company B] trades.  Despite this prior knowledge, you failed to
> re-engage with either FCC or senior management prior to
> executing the [Company B] trades.  Significantly, although you
> had a discussion with a divisional Compliance officer about the
> contemplated trades and may have mentioned [the Financier] or
> [the Fund], you did not specifically alert him to the fact they were
> subject to FCC and senior management restrictions.  In my view
> this entailed a level of negligence such as to warrant the
> termination of your employment and I did not get a sufficient sense
> from our meeting that you recognized the seriousness of your
> misjudgments or had resolved to learn from them.

(*Id.* at 1.)  Esposito further explained that "it should have been clear to you that you should not deal with [the Financier] or [the Fund] in the course of executi[ng] business without prior approval."  (*Id.* at 2.)  At the conclusion of the decision, Esposito announced that Plaintiff's employment would be terminated effective February 5, 2017.  (*Id.*)

Following the termination decision, GSI filed two regulatory notifications required by law and/or regulation.  *First*, on November 15, 2016, GSI submitted a Form L with one of its U.K. regulators, the Prudential Regulation Authority ("PRA")  providing the reasons why GSI terminated Plaintiff's employment.   (*Id.* ¶ 86; Rogers Decl., Ex. D.)  *Second*, on March 7, 2017, GSCO filed a Form U-5 (together, with the Form L, the "Regulatory Reports") with FINRA regarding the termination of Plaintiff's employment and consequent termination of his registration with FINRA.  (Am. Compl. ¶ 94; Rogers Decl., Ex. E.)

In his Amended Complaint, Plaintiff alleges that on April 4 and April 11, 2017—well after the termination decision and the firm's regulatory notifications—he filed reports with the SEC and CFTC.[5]  (Am. Compl. ¶¶ 19, 104, 120.)  Plaintiff does not allege that Defendants knew or could have known about these filings at the time they were made.

During his employment, Plaintiff received equity awards pursuant to Goldman Sachs' Stock Incentive Plan ("SIP") which were forfeitable in the event the recipient engaged in conduct constituting "Cause" as defined in the SIP.  Plaintiff was notified on December 28, 2017 that the committee responsible for implementing the SIP (the "SIP Committee") had determined that he had engaged in Cause as defined in the SIP and as a result certain tranches of certain equity awards that were unvested at the time of his misconduct would be forfeited.  (Am. Compl. ¶ 96; Rogers Decl., Ex. F.)  On March 14, 2018, Plaintiff was notified that the SIP Committee had determined that he had associated with a "Competitive Enterprise" as defined by the SIP, and accordingly a number of vested equity awards were forfeited.  (Am. Compl. ¶ 96; Rogers Decl., Ex. G.)  Rollins is employed in London by a financial services firm.  (Am. Compl. ¶ 27.) It was only after these decisions, on March 19, 2018, that Plaintiff allegedly "notified" Goldman Sachs that he had filed reports with the SEC and the CFTC.  (Am. Compl. ¶ 97.)

On May 15, 2018, in accordance with its regulatory obligations in the United Kingdom, GSSL responded to a request for a reference from a U.K.-based prospective employer of Plaintiff.  (*Id.* ¶¶ 99, 139-140); *see* Financial Conduct Authority ("FCA") Handbook, SUP 10A.15; FCA Handbook, SUP 10C.16, PRA Rulebook, PRA2016/15.  As required by FCA

---

[5] Plaintiff did not reveal the dates of his alleged regulatory reports in his original Complaint; he did so in the Amended Complaint only after Defendants pointed out the omission in the course of the Court's pre-motion conference process.

rules, the letter summarized the reasons for Plaintiff's discharge described in the November 7, 2016 hearing officer's decision.  (Am. Compl. ¶¶ 139-140; Rogers Decl., Ex. H.)

Plaintiff alleges that, on August 7, 2018, GSCO informed him that it had imposed "financial penalties" in connection with interests he holds in certain Goldman Sachs private equity funds, as permitted in the event of conduct that constituted "Cause."  (Am. Compl. ¶ 101.) The notice reflects that the re-categorization of Plaintiff's investor status in these funds was merely a reapplication of the prior Cause determination, dating from December 2017 and applicable to equity awards and interests.  (Rogers Decl., Ex. I.)

## ARGUMENT

### I.    THE COURT SHOULD COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS IN ACCORDANCE WITH THE ARBITRATION PROVISION IN HIS MANAGING DIRECTOR AGREEMENT.

#### A.    Legal Standard.

The Federal Arbitration Act (the "FAA") provides that, "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall upon application of one of the parties stay the trial of the action until such arbitration has been had."  9 U.S.C. § 3; *see Katz* v. *Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).  "In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."  *In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citation omitted).  "If the dispute falls within the scope of the arbitration clause, the role of the court ends and the matter is one for arbitration."  *Chatziplis* v.

*PriceWaterhouseCoopers LLP*, 2018 WL 3323820, at *2 (S.D.N.Y. July 6, 2018) (Ramos, J.) (internal quotations and citation omitted).

        The Supreme Court has repeatedly affirmed that the FAA establishes "a liberal federal policy favoring arbitration agreements," *Epic Systems Corp.* v. *Lewis*, 138 S. Ct. 1612, 1621 (2018), and that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. . . ," *Guyden* v. *Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008).  Thus, a court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc.* v. *Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted).

      **B.**     **Plaintiff Agreed To Arbitrate Any and All Employment-Related Claims.**

        In his Managing Director Agreement, signed on November 18, 2010 and reaffirmed as part of his U.K. employment contract on September 22, 2016, Plaintiff agreed that "any dispute, controversy or claim arising out of or based upon or relating to Employment Related Matters will be finally settled by arbitration" and that he "underst[ood] and acknowledge[d] that [he] [was] agreeing to arbitrate all claims described above, in accordance with the arbitration procedure set forth" in the Managing Director Agreement.  (Rogers Decl., Ex. A ¶¶ 8.1, 8.2; *id.* Ex. B at 6-7 ¶¶ 8.1, 8.2.)  The Arbitration Provision is identical in all material respects to the provision enforced by the Second Circuit in another decision involving a Goldman Sachs Managing Director, *Parisi* v. *Goldman Sachs & Co.*, which found "no reason to deviate from the liberal federal policy in favor of arbitration."  710 F.3d 483, 488 (2d Cir. 2013).

### C.   Plaintiff's Arbitration Provision Is Plainly Enforceable as to His SEC Dodd Frank, Fraudulent Inducement, and Defamation Claims.

Judges of this Court have repeatedly affirmed that claims brought under the SEC whistleblower anti-retaliation provision of the Dodd Frank Act are arbitrable. *See Daly* v. *Citigroup Inc.*, 2018 WL 741414, at *4 (S.D.N.Y. Feb. 8, 2018); *Citigroup Glob. Mkts. Inc.* v. *Preis*, 2015 WL 1782135, at *4 (S.D.N.Y. Apr. 24, 2015); *Murray* v. *UBS Secs., LLC*, 2014 WL 285093, at *10–11 (S.D.N.Y. Jan. 27, 2014).

It is similarly undeniable that Plaintiff's fraudulent inducement and defamation claims are subject to arbitration. *See, e.g.*, *Great Lengths Universal Hair Extensions S.r.L.* v. *Gold*, 2017 WL 1731184, at *6–7 (S.D.N.Y. Mar. 29, 2017); *Ralph Lauren Corp.* v. *U.S. Polo Ass'n, Inc.*, 2014 WL 4377852, at *6 (S.D.N.Y. Sept. 4, 2014); *Barr* v. *Sullivan*, 2009 WL 4030826, at *2 (S.D.N.Y. Nov. 20, 2009).[6]

### D.   Plaintiff's Insubstantial CFTC Claim Should Be Stayed Pending Arbitration.

Plaintiff—no doubt aware that his other claims are subject to arbitration—pleaded one claim under Dodd Frank's CFTC anti-retaliation provision, based on the insubstantial and inchoate assertion that one trading account was "intended" to trade in CFTC-regulated products. (Am. Compl. ¶ 105.)   Plaintiff acknowledges, however, that the account never was actually funded, and thus never actually traded CFTC-regulated (or other) products, and closed soon after being opened.  (*Id.* ¶ 105 and n.5.)  Rollins' CFTC claim should be stayed pending arbitration of the other claims because (1) it is facially deficient and an obvious effort to gain a foothold

---

[6] Nor can there be any argument that Plaintiff's claims against Esposito are not arbitrable.  *See Meyer* v. *Uber Techs., Inc.*, 868 F.3d 66, 80 n.11 (2d Cir. 2017) ("Courts in this and other circuits consistently have held that employees or disclosed agents of an entity that is a party to an arbitration agreement are protected by that agreement.").

despite the predominating arbitrable claims, and (2) there is significant factual overlap between the CFTC claim and Plaintiff's three arbitrable claims, and thus a stay promotes efficiency.

When fewer than all claims are subject to arbitration, "[t]he decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control the docket." *Katsoris* v. *WME IMG, LLC*, 237 F. Supp. 3d 92, 110 (S.D.N.Y. 2017) (alteration in original) (citing *Genesco, Inc.* v. *T. Kakiuchi & Co. LTD.*, 815 F.2d 840, 856 (2d Cir. 1987)). "Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." *Norcom Elecs. Corp.*, 104 F. Supp. 2d at 207 (citing *Genesco, Inc.*, 815 F.2d at 856). Discretionary stays are warranted when there is "significant factual overlap between the remaining claims and the arbitrated claims." *Winter Inv'rs, LLC* v. *Panzer*, 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015) (citation omitted). Here, there is significant overlap between the facts underlying the CFTC claim and Plaintiff's arbitrable claims, and thus a stay would preserve economies of time and expense. Litigation of the SEC and CFTC claims will involve substantially identical discovery concerning, among other things, Goldman Sachs' investigation of Plaintiff and the reasons for Plaintiff's termination. Indeed, Plaintiff points to the same internal complaints as triggering whistleblower protections under both the CFTC and SEC anti-retaliation provisions. (Am. Compl. ¶¶ 104, 120.) Moreover, and as discussed *infra* p. 14–19, the facial weakness of Plaintiff's CFTC claim provides further reason to grant a stay at this time.

## II. SHOULD THE COURT NOT STAY PROCEEDINGS, THE COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM.

To the extent the Court declines to stay any of Plaintiff's claims, the Court should dismiss them because each claim fails as a matter of law.

A.    **Legal Standard.**

Even on a motion to dismiss, the Court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Garcia* v. *Kings Cty. Hosp. Ctr.*, 2018 WL 389212, at *3 (S.D.N.Y. Jan. 11, 2018) (Ramos, J.) (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *Nielsen* v. *Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.*  A plaintiff must plead "sufficient facts to show 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Id.*  If a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.* (alterations in original) (quoting *Iqbal*, 556 U.S. at 680; *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555 (2007)).

B.    **Plaintiff's SEC and CFTC Claims Should Be Dismissed Because Dodd Frank Does Not Apply Extraterritorially.**

The Second Circuit has unequivocally held that "the whistleblower antiretaliation provision of the Dodd-Frank Act, 15 U.S.C. § 78u-6(h), does not apply extraterritorially."  *Liu Meng-Lin* v. *Siemens AG*, 763 F.3d 175, 183 (2d Cir. 2014).  Plaintiff's whistleblower claims are centered on events occurring abroad and thus must be dismissed.

In *Ulrich* v. *Moody's Corp.*, a judge of this Court found that the plaintiff's whistleblower claims were extraterritorial and thus not subject to Dodd Frank, even though the plaintiff was a U.S. citizen and alleged that "managers in New York orchestrated the retaliation against him."  2014 WL 4977562, at *8 (S.D.N.Y. Sept. 30, 2014), *aff'd*, 721 F. App'x 17 (2d

Cir. 2018).  The Court held that the plaintiff's claims were extraterritorial because the plaintiff was a Hong Kong permanent resident and worked for a Hong Kong company, the "reported" conduct occurred in Hong Kong, and the plaintiff was suspended and terminated in Hong Kong. *Id.*[7]  The Court, relying on *Liu*, emphasized that "simply alleging that some domestic conduct occurred cannot support a claim of domestic application because it is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States."  *Id.* (emphasis in original) (quoting *Liu*, 763 F.3d at 179).

Similarly, here, Plaintiff worked in London during the period in question (Am. Compl. ¶ 55); the conduct that he allegedly reported occurred primarily abroad (*see id.* ¶¶ 35-54); the conduct for which he was terminated occurred in the United Kingdom (*id.* ¶¶ 47-49); and the investigation into Plaintiff's conduct and the decision to terminate his employment also substantially took place in the United Kingdom (*id.* ¶¶ 58-84).  As in *Ulrich*, the few U.S. connections alleged by Plaintiff are insufficient to render Plaintiff's entire claim domestic.  *See, e.g.*, *Morrison* v. *Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 266 (2010) ("[T]he presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case." (emphasis in original)).  To find that Plaintiff's claims are domestic would open U.S. courts to second-guessing of legitimate employment decisions made by foreign employers regarding conduct that occurred abroad.  The law does not permit such extraterritorial inquiries.

---

[7] The plaintiff, an assistant vice president for Moody's Investors Service in Hong Kong, alleged that he was terminated after reporting possible securities violations internally and to the SEC. *Ulrich*, 2014 WL 4977562, at *1.

C.   **Plaintiff Fails To State Claims Under Either the SEC or CFTC Anti-Retaliation Provisions of the Dodd Frank Act.**

Plaintiff alleges that Defendants retaliated against him by (1) terminating his employment, (2) reporting information about him to regulators, (3) cancelling certain of his equity awards, (4) "defaming" him to prospective employers in a reference letter, and (5) imposing "financial penalties" in connection with certain private equity fund interests.  (Am. Compl. ¶ 21.)   These claims fail as a matter of law because Plaintiff was not a qualifying "whistleblower" within the meaning of either the SEC or CFTC anti-retaliation provisions at the time of his termination or the Regulatory Reports, and because Plaintiff has failed plausibly to allege that any of the remaining acts were retaliatory.

1.   Plaintiff's CFTC Claims Must Be Dismissed Because Plaintiff Fails Plausibly To Allege that Those Acts Occurred "Because Of" His Report to the CFTC.

The CFTC anti-retaliation provision prohibits retaliation in the terms and conditions of employment "*because of* any lawful act done by the whistleblower (i) in providing information to the [CFTC] in accordance with subsection (b); or (ii) in assisting in any investigation or judicial or administrative action of the [CFTC] based upon or related to such information."   7 U.S.C. § 26(h)(1)(A) (emphasis added).   The CFTC has confirmed that "whistleblowers are protected only to the extent that the employer took the adverse employment action *because of* any lawful act done by the whistleblower *in providing information to the Commission or assisting the Commission*."   Whistleblower Incentives and Protection, 76 Fed. Reg. 53,172, 53,182 (Aug. 25, 2011) (internal quotations omitted) (emphasis added).

"[T]he Supreme Court has clarified that the term 'because of' typically 'imports, at a minimum, the traditional standard of but-for causation.'"   *Lawrence* v. *Int'l Bus. Mach.*

*Corp.*, 2017 WL 3278917, at *7 (S.D.N.Y. Aug. 1, 2017) (quoting *EEOC* v. *Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 (2015)).  Thus, in the context of the SEC anti-retaliation provision, which similarly prohibits retaliation "*because of* any lawful act done by the whistleblower," 15 U.S.C. § 78u-6(h)(1) (emphasis added), judges of this Court have held that "the plaintiff must demonstrate that his employment would not have been terminated but for his protected activity," *Lawrence*, 2017 WL 3278917, at *11 (citing *Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. at 2032).  Plaintiff has failed plausibly to allege that any of the adverse actions alleged in the Amended Complaint would not have been taken but for his CFTC report.

   *First*, with regard to the notices of forfeiture of equity awards on December 28, 2017 and March 14, 2018 (Am. Compl. ¶ 96), Plaintiff fails to allege that Defendants even knew about his report to the CFTC at the time those decisions were made.  Indeed, Plaintiff alleges that he did not notify Defendants of any regulatory filing until March 19, 2018—after the alleged adverse actions.  (*Id.* ¶¶ 96, 97.)  The tranches of Plaintiff's equity awards that were cancelled could not have been cancelled "because of" Plaintiff's supposed reports when Plaintiff himself alleges that Defendants were not *aware* of the reports until *after* Plaintiff was notified that the awards had been cancelled.  Accordingly, to the extent that Plaintiff's CFTC claim relies on the cancellation of his equity awards, that claim must be dismissed.

   *Second*, as to the regulatorily-required reference letter, Plaintiff has not alleged that Goldman Sachs' response would have been different but for Plaintiff's purported report to the CFTC.  Plaintiff alleges that a prospective employer contacted GSSL on April 24, 2018 "to

-17-

request a regulatory employment reference."[8]   (Am. Compl. ¶ 98.)   That regulatorily-required letter reflects precisely the content of the November 2016 written decision following Plaintiff's disciplinary hearing (which was written and issued long before Plaintiff alleges he made an external report).   (*Compare* Rogers Decl., Ex. C*, with id.* Ex. H.)   Plaintiff's allegation that this letter was drafted because Plaintiff reported to the CFTC, and not because GSSL was regulatorily required to convey information and did so in terms drafted long before any CFTC report, fails to "state a claim to relief that is plausible on its face."   *Iqbal*, 556 U.S. at 678.

*Third*, Plaintiff similarly has failed to plead that GSCO would not have "imposed financial penalties" in August 2018 in connection with Plaintiff's private equity fund interests but for his report to the CFTC.   (Am. Compl. ¶¶ 101.)   That document on its face was merely a notice to Rollins of the application of the Cause determination previously made with respect to his equity awards in late 2017, months before Rollins' alleged report.   (Rogers Decl., Ex. I.) Plaintiff himself alleges that GSCO's letter stated that these penalties were imposed as a result of conduct defined as "Cause."   (Am. Compl. ¶ 101.)   Because the August 2018 letter was the product of a determination made before Goldman Sachs was aware of any CFTC report, Plaintiff's claim should be dismissed.   *See Baldwin* v. *Goddard Riverside Cmty. Ctr.*, 53 F. Supp. 3d 655, 674 (S.D.N.Y. 2014) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

---

[8] The PRA and FCA *require* member firms to provide employment reference letters upon the request of a prospective employer and to "disclose to the [prospective employer] in the reference *all information of which [the former employer] is aware that is relevant to [the prospective employer's] assessment of whether [the prospective employee] is fit and proper*."   PRA 2016/15(3.1) (emphasis added); *see also* FCA, SUP 10A.15.1; FCA, SUP 10C.16.1.

2.   Plaintiff's CFTC and SEC Dodd Frank Claims Must Be Dismissed as to
All Alleged Adverse Actions that Occurred *Before* His External Reports
Were Made.

Last February, the Supreme Court held that the Dodd Frank Act's SEC anti-retaliation provision applies only to acts after an individual provides information to the SEC.  *See Digital Realty Trust, Inc.*, 138 S. Ct. at 778.  The Court made clear that an individual is not protected by the anti-retaliation provisions until the individual has reported misconduct to the SEC:  "Our reading shields employees . . . *as soon as they [] provide relevant information to the Commission*.  True, such employees will remain ineligible for Dodd-Frank's protection until they tell the SEC, but this result is consistent with Congress' aim to encourage SEC disclosures."  *Id.* at 780 (emphasis in original) (citing S. Rep. No. 111-176, at 38 (2010)).  There can be no serious argument that the requirement of external reporting does not apply to the CFTC provision of the Dodd Frank Act as well.  *Compare* 7 U.S.C. § 26(a)(6), *with* 15 U.S.C. § 78u-6(a)(6).

Plaintiff alleges in his Amended Complaint that he reported to the CFTC and to the SEC on April 4 and 11, 2017, respectively—*after* his termination and *after* GSI and GSCO filed the Regulatory Reports.  (Am. Compl. ¶¶ 16, 19, 86, 94.)  Accordingly, as a matter of law and metaphysics, Plaintiff was not a "whistleblower" under either the SEC or CFTC retaliation provisions at the time that any of these supposedly "retaliatory" acts took place.  *See, e.g., Johnson* v. *AmeriGas Propane, L.P.*, 2018 WL 2304742, at *5 n.5 (N.D.N.Y. May 21, 2018) ("Plaintiff cannot seek protection . . . when he did not report any securities law violations to the SEC prior to his termination."); *Price* v. *UBS Fin. Secs., Inc.*, 2018 WL 1885669, at *2 (D.N.J. Apr. 19, 2018) ("Plaintiff did not come forward until well after the fact of the alleged securities violations, his testimony to FINRA and his own termination. . . .  The Court, therefore, finds that Plaintiff does not meet the definition of 'whistleblower' under Dodd-Frank.").

3.      Plaintiff's SEC Claim Must Be Dismissed as to All Other Alleged Acts of Retaliation Because Plaintiff Fails Plausibly To Allege that Those Acts Occurred "Because Of" Any Protected Report.

As noted above, the CFTC anti-retaliation claim must be dismissed because the Amended Complaint does not and cannot adequately plead that any adverse actions took place "because of" his report to the CFTC, as required by the CFTC provision.  Although a plaintiff must establish that any adverse events would not have been taken but for the alleged protected activity under the SEC anti-retaliation provision, *see Lawrence*, 2017 WL 3278917, at *11, the SEC provision is broader than the CFTC provision, providing that after an individual has made a report to the SEC he or she may be protected from retaliation based on internal as well as SEC disclosures, *see Digital Realty Trust*, 138 S. Ct. at 779.  Of course, to state a claim under the SEC provision, a plaintiff must still plausibly allege a causal connection between the protected activity and the purported retaliation—which Rollins fails to do here.

The alleged adverse actions that supposedly post-dated Plaintiff's alleged reports to the SEC are the cancellation of his equity awards, the regulatory reference letter, and the alleged "financial penalty" relating to private equity fund interests.  Plaintiff has not pleaded, and cannot plausibly plead, that any of those actions would not have occurred but for any purported reporting, internal or external, particularly because those actions merely implemented decisions made *prior* to the alleged SEC report.  One tranche of Plaintiff's equity awards was cancelled because the Firm's internal investigation—which was undertaken and completed *before* Rollins' alleged external reporting—determined that Rollins had engaged in conduct that the SIP Committee ultimately found constituted "Cause" under the SIP.  (Rogers Decl., Ex. F.)  The other tranche was cancelled because Plaintiff engaged in a "Competitive Enterprise" as defined in the SIP.  (*Id.* Ex. G.)  Plaintiff has not, and cannot, allege that these actions would not have

taken place "but for" his reporting.  And the regulatory reference and the "financial penalties" merely constituted implementation of decisions made long before.

"Employers need not suspend previously planned [actions] upon discovering that a [protected activity occurred], and their proceeding along lines previously contemplated, though not yet definitely determined, is no evidence whatsoever of causality." *Baldwin*, 53 F. Supp. 3d at 674 (alteration in original) (citing *Clark Cnty. Sch. Dist.* v. *Breeden*, 532 U.S. 268, 272 (2001)); *see also, e.g., Forest* v. *N.Y. State Office of Mental Health*, 2015 WL 6965149, at *9 (S.D.N.Y. Nov. 10, 2015) (that a notice of discipline closely followed an administrative complaint was not evidence of retaliation when the notice was "the result of a review process" that already had begun in advance of the filing of the complaint).

Goldman Sachs commenced its investigation and terminated Plaintiff's employment *well before* Plaintiff allegedly reported to the SEC.  Plaintiff has pointed to no facts that "nudged [his] claims across the line from conceivable to plausible" and, accordingly, the SEC claim as to the acts of alleged retaliation after the SEC report must also be dismissed.  *See Garcia*, 2018 WL 389212, at *3.

**D.      The Dodd Frank Claims Should be Dismissed as to Esposito and GSSL.**

Defendants GSSL and Esposito were not Plaintiff's "employer" for purposes of Dodd Frank.  Both the SEC and CFTC provisions prohibit retaliation against whistleblowers by an "employer."  *See* 7 U.S.C. § 26(h)(1)(A) ("No employer may discharge. . . ."); 15 U.S.C. § 78u-6(h)(1)(A) ("No employer may discharge. . . .").

The Amended Complaint fails to allege *any* facts raising a plausible claim that either GSSL or Esposito was Plaintiff's employer at the time of the alleged retaliation.  According to the Amended Complaint, Plaintiff's assignment with GSSL ended on August 31,

2016, and there is no further allegation that GSSL had anything to do with Plaintiff's work. (Am. Compl. ¶ 33 n. 3.)   As for Esposito, Plaintiff himself alleges that Esposito's sole involvement in this matter was presiding over Plaintiff's disciplinary hearing; there is no allegation that Esposito ever controlled "the manner and means by which" Plaintiff completed his work.  *Lawrence*, 2017 WL 3278917, at *5 (in analyzing an SEC retaliation claim under Dodd Frank, applying common law agency principles to determine whether an employment relationship exists when a remedial statute fails to define the term and noting that the most important factor is "the right to control the manner and means" by which work is completed).

       **E.**       **Plaintiff's Claims for Fraudulent Inducement and Defamation Should Be Dismissed.**

       Upon dismissal of Plaintiff's federal law claims, Plaintiff's pendent common law claims should be dismissed as well.  When a plaintiff's federal claims are dismissed before trial, the "traditional values of judicial economy, convenience, fairness, and comity weigh in favor of declining to exercise supplemental jurisdiction over any remaining state law claims."  *K.D. ex rel. Duncan* v. *White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 218 (S.D.N.Y. 2013) (Ramos, J.) (internal quotations and citation omitted).  This Court routinely declines to exercise supplemental jurisdiction over state law claims when it dismisses federal law claims on a Rule 12(b)(6) motion to dismiss.  *See, e.g.*, *Renxiong Huang* v. *Minghui.org*, 2018 WL 3579103, at *5 (S.D.N.Y. July 25, 2018) (Ramos, J.).  Plaintiff's state law claims also fail as a matter of law.

       1.       <u>Plaintiff Has Not Alleged Any Misrepresentation of Material Fact or that He Relied on Any Such Misrepresentation to His Injury.</u>

       To state a claim for fraudulent inducement under New York law, "the defendant must have made a misrepresentation of a material fact, that was known to be false and intended to be relied on when made, and that the plaintiff justifiably relied on that misrepresentation to its

injury." *Lankau* v. *Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 675 (S.D.N.Y. 2017) (citations omitted).   Fraudulent inducement claims must meet the heightened pleading standard of Rule 9(b).   *Cohen* v. *Avanade, Inc.*, 874 F. Supp. 2d 315, 324 (S.D.N.Y. 2012).   Thus, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."   *Id.* (citation omitted).   "Plaintiff's failure to name individuals, identify detailed statements, or identify particular dates makes clear that as pleaded this claim lacks the specificity required by Rule 9."   *Schlenger* v. *Fid. Emp'r Servs. Co., LLC*, 785 F. Supp. 2d 317, 352 (S.D.N.Y. 2011).

Plaintiff's fraudulent inducement claim fails for two primary reasons.   Plaintiff appears to suggest that, based on an envelope label reading "UK Contract," he understood that the employment documentation contained therein was his "permanent UK employment contract."   (Am. Compl. ¶ 131.)   Yet Plaintiff has failed to "explain why" an exterior label indicating that the employment documentation sent to Plaintiff was his "UK Contract" could possibly be "fraudulent."   *Cohen*, 874 F. Supp. 2d at 324.   The documentation in that envelope was precisely what the envelope stated:   an employment agreement for a U.K. employee, to be covered by U.K. employment law.   (*See* Rogers Decl., Ex. B.)

Plaintiff also cannot reasonably claim to have relied on any supposed misstatement to his "injury," because the disciplinary procedures applicable to Plaintiff under the "UK Contract" were *more* protective of his employment than they would have been under New York law.   *See Lankau*, 266 F. Supp. 3d at 675.   Under the original Managing Director Agreement, Plaintiff's employment was "at will."   (Rogers Decl., Ex. A ¶ 1.1.)   Plaintiff claims that the GSI employment agreement was intended "solely for the purposes of establishing a legal

basis to conduct disciplinary proceedings against him under UK law."  (Am. Compl. ¶ 133.)  But even if that unsubstantiated allegation were true, by transferring employment from the United States to the United Kingdom, Plaintiff obtained more rights with respect to the supposed contemplated disciplinary action and the termination of his employment.  Indeed, unlike in the United Kingdom, where Plaintiff was entitled to and received a disciplinary hearing before termination, Plaintiff was an at-will employee in the United States; Goldman Sachs was free to terminate his employment at any time, without establishing any justification for such termination.  Plaintiff cannot plausibly claim that he relied on Goldman Sachs' representations to his detriment by entering into an agreement that conferred *more protective* rights on Plaintiff in relation to the disciplinary process and any resulting disciplinary action.[9]

> 2.    Plaintiff Has Failed To Plead Facts Sufficient To Overcome Qualified Privilege Over Employment Reference Letters.

"[C]ourts have long held that communications between a plaintiff's former employer and his prospective employer cannot support a defamation claim because New York recognizes a 'qualified privilege' for 'communications addressing the employee's performance, his character, or the reason for his termination.'"  *Apionishev* v. *Columbia Univ. in City of N.Y.*, 2012 WL 208998, at *10 (S.D.N.Y. Jan. 23, 2012) (citations omitted).  The qualified privilege "can only be overcome by a showing that the defamatory remarks were made with actual malice."  *Id.* (citation omitted).  To show actual malice, a plaintiff must prove "spite, ill will, or such culpable recklessness or gross negligence as constitutes a wanton disregard of the rights of

---

[9]  Plaintiff's fraudulent inducement claim should also be dismissed as to Esposito because Plaintiff has failed to allege *any* facts that plausibly suggest that Esposito was in any way involved in Goldman Sachs' supposed efforts to induce Plaintiff to accept the transfer of employment to GSI.

others."   *Id.* (citation omitted).   "Bald allegations that defendants acted with malice—unadulterated by any factual support whatsoever—do not me[e]t this burden."   *Orenstein* v. *Figel*, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009).

Plaintiff fails to plead actual malice sufficient to overcome the qualified privilege that attaches to employment reference letters.   As discussed *supra* note 8, Goldman Sachs was *required* by the PRA and FCA to provide employment reference letters upon the request of a prospective employer and to "disclose to the [prospective employer] *all information of which [the former employer] is aware that is relevant to [the prospective employer's] assessment of whether [the prospective employee] is fit and proper*."   PRA 2016/15(3.1) (emphasis added); *see also* FCA, SUP 10A.15.1; FCA, SUP 10C.16.1.   The reference letter did just that.   There is nothing inconsistent between the reference letter, which accurately describes the conduct for which Plaintiff's employment was terminated and which does not state that the Plaintiff was terminated for cause, and the alleged statement made by Defendants that they did not believe Plaintiff had engaged in conduct constituting "cause."   (Am. Compl. ¶ 144.)   Because these communications are entirely consistent, Plaintiff has failed to allege the requisite "spite, ill will, or [] culpable recklessness" required to overcome the well-established qualified privilege that accompanies employment reference letters.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court order Plaintiff to arbitrate his SEC retaliation, fraudulent inducement, and defamation claims and stay this action.   Alternatively, Defendants respectfully request that the Court dismiss Plaintiff's claims with prejudice.

-25-

Respectfully,

*/s/ Theodore O. Rogers, Jr.*
Theodore O. Rogers, Jr.
Matthew J. Porpora
Kate L. Doniger
Jacob G. Singer
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004
(212) 558-4000

*Attorneys for Defendants*

October 25, 2018