**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CHRISTOPHER ROLLINS,

               Plaintiff,

     v.

GOLDMAN SACHS & CO. LLC,
JAMES P. ESPOSITO, GOLDMAN
SACHS GROUP, INC., GOLDMAN
SACHS INTERNATIONAL and
GOLDMAN SACHS SERVICES LIMITED,


              Defendants.

Case No. 18-cv-7162 (ER) (GWG)


**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE**
**ARBITRATION AWARD**

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.      ROLLINS WAS DENIED ACCESS TO PERTINENT AND MATERIAL EVIDENCE .1

        A.      Compliance Records Were Unquestionably Relevant ............................................ 1

        B.      Compliance Records Were Available ..................................................................... 5

        C.      Compliance Records Were Not Cumulative or Unnecessary. ................................ 7

II.     THE PANEL BLOCKED ROLLINS FROM PRESENTING HIS CASE ........................ 8

        A.      The Panel Ignored New York Law and FINRA's Rules ....................................... 12

        B.      The Proceeding Was Fundamentally Unfair and Should be Vacated ................... 13

## **TABLE OF AUTHORITIES**

**Cases**

*Chevron Transp. Corp. v Astro Vencedor Cia. Naviera, S. A.,* 300 F. Supp. 179 (S.D.N.Y. 1969). ........................................................................................................................ 8, 9

*Home Indem. Co. v Affiliated Food Distribs.*, 1997 US Dist. LEXIS 19741 (S.D.N.Y. 1997)...... 8

*Hoteles Condado Beach, La Concha & Convention Ctr. v Union de Tronquistas Local*, 588 F. Supp. at 685901, 763 F. 2d 34, 40 (1st Cir. 1985)............................................................. 8, 11

*Kaplan v Alfred Dunhill of London*, 1996 US Dist. LEXIS 16455 (S.D.N.Y. 1996).................. 13

*NFL Mgt. Council v NFL Players Assn.*, 125 F. Supp. 3d 449 (S.D.N.Y. 2015) ................... 8, 12

*Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union No. 56 v. E.D. Clapp Corp.*, 551 F. Supp. 570, 578 (N.D.N.Y. 1982) aff'd, 742 F.2d 1441 (2d Cir. 1983).................................. 8

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F. 3d 200 (2d Cir. 2002) ........................... 12

**Statutes**

9 U.S.C. § 10(a)(3)........................................................................................................................ 7

## PRELIMINARY STATEMENT

Plaintiff Christopher Rollins moves pursuant to 9 U.S.C. § 10 to vacate an arbitration award rendered by a panel on or about March 4, 2021 governed by the rules of the Financial Industry Regulatory Authority ("FINRA") in Case No. 19-02249 (the "Award").[1] Rollins respectfully submits that the Award should be vacated because the panel effectively excluded crucial evidence and disregarded applicable law. The panel denied Rollins' defamation, expungement and fraud claims which were based on statements that he violated a company policy even though (a) there were no documents substantiating the policy's existence and (b) documents from the firm's compliance division, which were unquestionably relevant, available and non-cumulative, were never made available to Rollins. As a result, Rolllins was denied a full and fair opportunity to present his case.

## ARGUMENT[2]

I.   **ROLLINS WAS DENIED ACCESS TO PERTINENT AND MATERIAL EVIDENCE**

A.   **Compliance Records Were Unquestionably Relevant**

Rollins filed his Amended Statement of Claim ("ASOC") on October 2, 2019, alleging that Goldman Sachs first fabricated a firmwide policy restricting all business-related contact with the Financier as a pretext for his termination and then made false statements that Rollins violated the non-existent policy. (Ex. 8, at 4.)  Specifically, Rollins' claims for expungement, defamation and fraud were based on statements made by Goldman Sachs that Rollins had, in August 2016, acted in violation of a company policy imposed by a division of the firm's global compliance function,

---

[1] The Award is attached as Exhibit 1. Transcripts of the six hearing days are attached as Exhibits 2-7, respectively.

[2] Exhibit cites are to those submitted with the Declaration of Seth Redniss. Exhibits 2-11 have been filed electronically under seal pursuant to the Court's April 26, 2021 Order. (ECF No. 44.)

known as Financial Crimes Compliance ("FCC"), that restricted personnel from allowing the
Financier to introduce prospective business opportunities to bank personnel. It is undisputed that
Rollins was involved in August 2016 trades between Goldman Sachs clients which were
introduced by the Financier but, absent a relevant policy restriction or a finding that the business
introduced was improper or illegal, there was nothing wrong with the Financier doing so, as
Management Committee member and Rollins' supervisor, Michael Daffey admitted in his
testimony on the fifth day of the hearing:

> Q.    Are you aware of any restrictions that would have prevented [the Financier] from
> introducing business into Goldman?
>
> A.    No.

Ex. 6, Tr. 1040:22-25.

By definition, *company-wide* policy requires that the policy be in writing and be
implemented such that it is vailable to appropriate personnel. When it comes to implementation of
an FCC policy, such as the one Rollins was alleged to have violated, Goldman Sachs is required
to adhere to the procedures contained in the firm's anti-money laundering manual. (Ex 5, Tr. 454-
455.) The firm's requirements to adopt and follow these policies and procedures are part of its
legal obligations to detect and prevent financial crime. Because Goldman Sachs denied Rollins'
allegations, and argued that their statements about the policy were true, Rollins intended to prove
the falsity of Goldman Sachs' statements by demonstrating that FCC had never implemented a
compliance policy through its systems that prevented the Financier from making business
introductions. Thus, Rollins' discovery of documents and records from the firm's compliance
division, including FCC, was central to his ability to present his case, and unquestionably relevant

to the arbitration panel's determination as to the truth of Goldman Sachs' statements that Rollins had violated a valid company policy.[3]

Rollins' claim for defamation[4] was based on a statement that Goldman Sachs emailed to, and was published by, Bloomberg.com on August 9, 2018:

> As referenced in a filing the firm made in March 2017, Mr. Rollins executed certain trades involving a previously restricted party without obtaining appropriate authorization. As a result, his employment was terminated.

Ex 8, at 58.

Rollins' claim for expungement[5] was based on Goldman Sachs' statement reported to FINRA via a Form U5, which is still publicly available, that:

> Allegations against the representative by a foreign affiliate of GS&Co that after the foreign affiliate restricted a counterparty by not permitting it to open an execution account due to compliance concerns, which were expressed to the representative, the representative allowed that same party to introduce and arrange trades a short time later in August 2016, without the approval of or guidance from Compliance or senior management knowledgeable about the relevant concerns.

Ex. 8 at 41.

Rollins' fraud claim[6] was based on material misrepresentations and material omissions made in relation to the 2016 internal disciplinary process that resulted in his termination by Defendant Esposito who fired Rollins for violating the same purported policy restricting contact

---

[3] Rollins made these same allegations in his First Amended Complaint (ECF No. 17) and Rollins' counsel advised the Court at the September 27, 2018 pre-motion conference that there was a "significant issue as to the existence of any applicable restrictions." ECF No. 18, pp. 8-9.

[4] Rollins' defamation claim was particularized for the panel in his post-hearing brief. (Ex. 9, at 12-20.)

[5] Rollins' expungement claim was particularized for the panel in his post-hearing brief. (Ex. 9 at 21-22.)

[6] Rollins' fraud and conspiracy claims were particularized for the panel in his post-hearing brief. (Ex. 9, at 22-25.)

with the Financier, even though no policy evidencing FCC restrictions had been part of the disciplinary record.

As detailed for the panel in Rollins' January 18, 2021, motion for sanctions, to prove his claims, he appropriately served document requests seeking documents relating to restrictions imposed on conducting business with the Financier, which Goldman Sachs agreed to produce. (Ex 10 at 3-4.) Goldman Sachs again represented that responsive documents would be produced in a May 19, 2020 letter sent by its counsel which stated that "We will be continuing to review [records kept by the firm's Compliance departments] and will produce any additional responsive documents . . . ." (*Id*. at 19.)

In discovery, however, Goldman Sachs never produced any records from compliance, including FCC, concerning the Financier. No case files concerning decisions made about the Financier or any documents evidencing any restrictions imposed had been produced. Because Goldman Sachs' counsel had represented that all such documents would be produced, there was nothing for Rollins to seek to compel, and the logical conclusion was either that compliance had never had any documentation about the Financier or that, whatever documentation had once existed, had been destroyed.

Either way, without any compliance records substantiating a relevant policy about contact with the Financier, Goldman Sachs would not be able to prove the truth of their statements. On August 18, 2020, after Goldman Sachs' last document production and three months before the hearing began, Rollins advised the panel that substantive motions were appropriate because of Goldman Sachs' *preservation* failures and evidentiary insufficiency. Ex. 11.  Rollins ultimately decided not to file any substantive motion because, even if successful, the relief would not reach all of his claims and a hearing would still be required.

4

B.     **Compliance Records Were Available**

Rollins had intended to cross-examine witnesses at the hearing with compliance records he

had expected to receive in discovery but was led to believe that no such records existed. Then, as

summarized in Rollins' January 18, 2021, motion for sanctions, on the third day of the hearing,

FCC officer Julian Broxup testified that the Financier had been included on a restricted list

maintained by FCC in August 2016. Ex. 10 at 5-6. This indicated that there was at least some

documentation from compliance which was available but had not been produced. On the morning

of the fourth hearing day, January 12, 2021, Rollins' counsel advised the panel of the issue. In the

ensuing discussions, Goldman Sachs' counsel admitted that his clients had never searched for any

responsive documents in records maintained by compliance because, in his view, such documents

were irrelevant. Mr. Rogers acknowledged this to the panel, stating:

> The restrictions -- and we dealt with this in the opening statement -- the restrictions that
> this case is about were the e-mails to Mr. Rollins and the statements to Mr. Rollins and the
> taped conversation with Mr. Rollins from FCC telling him we don't want to do business
> with [the Financier], and then he went ahead without telling him and do business with [the
> Financier]." T. 595:8 "And what this case is about is what Mr. Rollins was instructed and
> failed to follow. But yes. There is such a thing" [as a CIPIT database]. T.599:11. "These
> are not, from our point of view, relevant. And that is why the discovery history is such as
> it is." T. 596:13.

Ex. 5, Tr. 595-599.

Goldman Sachs' counsel tried to minimize the relevance of this information, characterizing

it as compliance's "little nuts and bolts." (*Id.*, Tr. 595:8 – 596:16.)[7] The panel directed the parties

to brief the issue and Rollins filed his motion for sanctions. On the morning of the sixth, and last,

---

[7] This was contrary to the position that Defendants took when they moved to compel arbitration
on October 25, 2018. In their memorandum of law, Goldman Sachs argued that Plaintiff's
allegation that compliance restrictions did not exist was "patently false," citing ¶ 63 of Plaintiff's
First Amended Complaint which quoted a senior Goldman Sachs lawyer, who had written
contemporaneously that "following enhanced due diligence[,] the Financial Crime Compliance
team had imposed restrictions on engaging with the Financier." (ECF No. 21, p. 6, fn. 4.)

day of the hearing, the chairperson of the panel stated that the panel had "decided to deny the motion with the note that the questions raised by Mr. Redniss may be appropriate for closing statement rather than the particular motion that was submitted." Ex. 7, Tr. 1080:10-15.

That day, Goldman Sachs' global head of FCC, Court Golumbic, testified. Contrary to the representations by counsel, Mr. Golumbic stated that he had personally made the relevant decisions relating to policy restrictions imposed on the firm relating to the Financier, that the decisions had been documented in accordance with the AML manual, that these records specifically addressed the statements the firm had made about Mr. Rollins and that these records had always been available, as the following exchange with Mr. Golumbic reveals:

Q.     When did you make the decision?

A.     From sometime between the time that I was alerted to the new information regarding the investment in . . . [the Financier's Fund] that caused the business to ask to revisit the decision that had previously been communicated to them by Mark Taylor and Julian Broxup. After that issue was raised to me by Mark and Julian, I disagreed with their recommendation that we open a limited cash equities DVP relationship, and instead, I advised them that I wanted to do no business with [the Financier] or [the Financier's Fund].

Q.     That was your decision. Is that a decision on behalf of FCC?

A.     Yes.

Q.     Okay.

A.     I'm the Global Head of FCC.

Q.     Okay. Did you document that decision?

A.     The decision not to do business with [the Financier] and [the Financier's Fund] would have been documented in our case files, yes.

Q.     Okay. What would have been documented in the case files?

A.     The declination.

Q.     What would it have said?

6

A.    For every case of this sort that we review and for which we make a determination the final disposition is documented in our case file. We create a case file for every single case of this sort.

Q.    Okay. In the term, the compliance term that you use for when a decision is made is a declination, right?

A.    A declination or a termination, to the extent that we're declining a relationship that's being proposed or terminating a relationship that already exists.

Q.    And in this case, was it a declination or a termination?

A.    This, it would have been a declination to do business with [the Financier's Fund] and [the Financier].

Q.    Okay. And so, would you use that phrase somewhere in the case file, "a general prohibition against doing business"?

A.    I didn't create the case file, so I can't tell you what's specifically written in the case file.

Ex. 7, Tr. 1214:8-1216:9.

Thus, on the afternoon of the last day of the hearing, Rollins, and the panel, heard testimony from the head of FCC that decisions relating to the Financier were contained in case files maintained in compliance records, none of which had been previously identified or produced.

C.    **Compliance Records Could Not Have Been Cumulative or Unnecessary**

Goldman Sachs was in sole and complete control of records from its compliance division. Mr. Golumbic's undisputed testimony as the firm's global FCC head was that he made the relevant policy decision to restrict the firm – not just Mr. Rollins -- and that this was documented in accordance with normal firm procedures. Although Mr. Golumbic claimed that documents including case files existed, he could not remember their content, underscoring Rollins' need for access to the compliance records and the fact that there was no source – other than the actual records themselves – to establish the existence, scope and implementation of any policy imposed

restricting firm employees from having certain business-related contact with the Financier. The content of these documents was (and remains) the only means to determine the truth of Goldman Sachs' statements for purposes of Rollins' defamation, expungement and fraud claims. Indeed, it is impossible for the panel or Goldman to even argue that the evidence in question would have been cumulative and not necessary without production of the records so that their relative importance and uniqueness can be addressed.

II.     **THE PANEL BLOCKED ROLLINS FROM PRESENTING HIS CASE**

Courts may vacate an arbitration award under the FAA where "the arbitrators were guilty of misconduct . . . by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Arbitrators have an "affirmative duty  . . . to insure that relevant documentary evidence in the hands of one party is fully and timely made available to the other party . . . . [A] failure to discharge this simple duty would constitute a violation of FAA § 10(a)(3), where a party can show prejudice as a result." *NFL Mgt. Council v NFL Players Assn*., 125 F. Supp. 3d 449, 472 (S.D.N.Y. 2015) (quoting *Home Indem. Co. v Affiliated Food Distribs.*, 1997 US Dist. LEXIS 19741 (S.D.N.Y. 1997). Courts may vacate an arbitration award "where the arbitrators were guilty of . . . refusing to hear evidence pertinent and material to the controversy." *NFL Mgt. Council*, at 462 (quoting FAA § 10). "[P]rinciples of fundamental fairness required that [Dunhill] be given a full opportunity to present its case to the arbitrator for consideration." *Teamsters, Chauffeurs, Warehousemen & Helpers, Local Union No. 56 v. E.D. Clapp Corp.*, 551 F. Supp. 570, 578 (N.D.N.Y. 1982) aff'd, 742 F.2d 1441 (2d Cir. 1983) (vacating arbitration award where arbitrator refused to hear party's pertinent and material evidence); accord *Hoteles Condado Beach, La Concha & Convention Ctr. v Union de Tronquistas Local*, 588 F. Supp. at 685901, 763 F. 2d 34, 40 (1st Cir. 1985). (affirming

vacatur of arbitration award where arbitrator refusal to consider "unquestionably relevant" testimony).

In *Chevron Transp. Corp. v Astro Vencedor Cia. Naviera, S. A.,* 300 F. Supp. 179 (S.D.N.Y. 1969), Chevron Transport Corporation ("Chevron") sought to vacate an arbitration award on the basis that it was denied access to the "port logs" from a ship it had chartered from, and was owned by, Astro Vencedor Compania Naviera, S.A. ("Astro Vencedor"). During the arbitration, Chevron had been prevented from preparing its case, including effectively cross-examining witnesses, because Astro Vencedor had only produced portions of the logs to Chevron. *Id.* at 179. The court stated:

> To supply such documents after oral hearings have terminated could well prejudice the ability of the disadvantaged party, not only in cross examination of witnesses, but in the preparation of its own case. The provision of excerpted portions of the document supplied by one party can place the disadvantaged party at the mercy of the adversary's judgment as to relevancy. Thus, where the document is reasonably available to either party, nothing less than full access to the logs by both parties to the proceeding would seem to suffice.

*Id*.

The court, observing that "perhaps the most important items of documentary evidence in any maritime controversy are the ship's logs," *id.*, held that arbitrators have an "affirmative duty to insure that relevant documentary evidence in the hands of one party is fully and timely made available to the other party before the hearing is closed. In my view, a failure to discharge this simple duty would constitute a violation of [§ 10(a)(3)] where a party can show prejudice as a result." *Id*.

Rollins' need for compliance documents, including FCC case files, to prove whether the policies he was accused of violating were actually imposed are at least as critical as the "ship's logs" were to Chevron in *Chevron Transp. Corp.* By allowing Goldman Sachs to decide self-servingly, based on their intended defense, where they would look for documents and what they would produce, the panel placed Rollins at the "mercy of [Goldman Sachs'] judgement as to relevancy."

In *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997), Neptune Plus Corporation ("Neptune") and its affiliate Tempo Shain Corporation ("Tempo Shain") entered into an agreement with Bertek, Inc. ("Bertek") under which Bertek would process materials that Neptune would then sell on to apparel manufacturers. *Id*. at 19. Disputes arose, arbitration was commenced and the parties asserted claims of fraudulent misrepresentation against each other. *Id*. Because the misrepresentations Neptune alleged that Bertek had made were not documented, Bertek planned to call its former president, Wayne Pollock, who had served as "Bertek's exclusive point-man in the negotiations" to rebut Neptune's testimony. *Id*. at 20. Pollock, however, became temporarily unavailable, and  Bertek asked the panel to keep the record open, but the panel declined and issued an award in favor of Tempo Shain. On appeal from the Southern District, the Second Circuit vacated the arbitration award, finding

> . . . there was no reasonable basis for the arbitration panel to determine that Pollock's omitted testimony would be cumulative with regard to the fraudulent inducement claims. Said differently, the panel excluded evidence plainly "pertinent and material to the controversy."

*Id*. quoting 9 U.S.C. § 10(a)(3).

In its analysis, the Second Circuit rejected the arbitration panel's assertion that Pollock's testimony had been cumulative "because Bertek's alleged misrepresentations were not documented, appellees' unsupported oral testimony concerning such representations was unrebutted because Pollock, who allegedly made the representations on Bertek's behalf, was not allowed to testify, and he is the only person who could have done so." *Id*. at 20-21. In *Tempo Shain*, the Second Circuit concluded that the arbitrators committed misconduct by excluding the only source of evidence needed for a party to rebut its adversary's oral testimony where the alleged misrepresentations were undocumented. Similarly, Rollins was unable to rebut whatever testimony the panel relied on to conclude that Goldman Sachs' statements were truthful (and justify the denial

10

of all of his claims) because he was prevented from cross-examining any witnesses with the available and identified compliance records.

In the case at bar, as alleged by Rollins in the ASOC and established at the hearing by Goldman Sachs' own witness, Mr. Golumbic, the relevant evidence was documented in the firm's compliance records. These documents, like the oral testimony Bertek needed in *Tempo Shain*, were the only source of evidence available to prove the truth or falsity of the statements relevant to Rollins' defamation, expungement and fraud claims. There was no reasonable basis for the FINRA arbitration panel, who had an affirmative duty to make the compliance records available to Rollins, to infer that their contents were cumulative. The panel was aware that compliance records were unquestionably relevant to a determination of whether Rollins actually engaged in any conduct in violation of any company policy but never actually had an opportunity to consider this evidence, effectively excluding it from the hearing.

In *Hoteles Condado Beach, La Concha & Convention Ctr. v Union de Tronquistas Local*, 588 F. Supp. at 685901, 763 F. 2d 34, 40 (1st Cir. 1985) which also involved an employees alleged violation of company policy, the First Circuit found that an arbitrator's refusal to consider evidence that allegedly justified the employee's termination, was "so destructive of [the Company's] right to present [its] case, that it warrants the setting aside of the arbitration award." The First Circuit concluded that " . . . no other evidence was available to substantiate or to refute the Company's charges that Otero had violated the rules regarding employment. The evidence effectively excluded by the arbitrator was both 'central and decisive' to the Company's position."

As noted above, not only had Management Committee member, Michael Daffey admitted there was no reason (or policy) that Rollins could have violated by participating in trades introduced by the Financier, but, underscoring the fact that Rollins could not have acted in

11

violation of FCC policy, Defendant Esposito, who made the decision to terminate Rollins, admitted that he terminated Rollins *without cause*:

> Q.     You didn't fire him for cause, did you?
>
> A.     I did not, no.

Ex. 3, Tr. 269:7-9.

A.     **The Panel Ignored New York Law and FINRA's Rules**

In order to vacate an arbitration award for manifest disregard of the law, a court must conclude that "the arbitrator knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*, 304 F. 3d 200, 217 (2d Cir. 2002). Rollins' post-hearing brief put the arbitrators on notice that there was established New York law that controlled the outcome of his defamation, expungement and fraud claims, citing relevant authority. The panel could not have logically applied the law to these facts – in the absence of any evidence in the record substantiating Goldman Sachs' purported policy -- and concluded that their statements were true.

Goldman Sachs attaches as Exhibit 1 to their Motion to Lift Stay and Confirm Arbitration Award the parties' arbitration agreement contained in Rollins' Managing Director Agreement which states calls for disputes to be "settled by arbitration in New York City before, and *in accordance with the rules* then obtaining of, the Financial Industry Regulatory Authority ("FINRA")" (emphasis added). As highlighted in his post-hearing memo, Goldman Sachs' withholding of evidence was a violation of FINRA rules, including FINRA Rule 13505 (cooperation in discovery), FINRA Rule 13508 (production of documents not objected to), FINRA Rule 13507(b)(parties must act in good faith) and the Ex. 9 at 25-26. The panel indisputably failed

to enforce FINRA rules against Goldman Sachs by allowing them to make self-serving relevancy determinations and withhold key evidence in violation of FINRA rules.

B.    **The Proceeding Was Fundamentally Unfair and Should be Vacated**

"'A fundamentally fair hearing requires that the parties be permitted to present evidence and cross-examine adverse witnesses.'" *NFL Mgt. Council*, at 470-471 quoting *Kaplan v Alfred Dunhill of London*, 1996 US Dist. LEXIS 16455 (S.D.N.Y. 1996). The Award is the result of a proceeding in which the panel failed to afford Rollins a full and fair opportunity to present his case. Rollins' core allegations, central to all of his claims, were that Goldman Sachs never implemented the policy they accused him of violating, rendering all of their statements about Rollins objectively false.

As noted in Rollins' March 12, 2021 letter to the Court, ECF No. 35 at 3, fn. 3, Goldman Sachs' suggestion that Rollins agreed the hearing was fair is disingenuous. He had been led to believe by the chairperson's statements that morning that the panel would consider Goldman Sachs' suppression of compliance records in rendering their award, the scope of which was revealed to be even broader later that same day when Mr. Golumbic testified that relevant policy-related documents did, in fact, exist.

The panel was aware that Rollins had been denied access to the compliance records which were the only source of evidence as to decisions made and relevant policy imposed. As a result, he was unable to cross-examine any of the Goldman Sachs witnesses, including three compliance officers, a senior lawyer, and two Management Committee members about this decision and policy restrictions. Once they learned that the compliance records were available, the panel had the opportunity and affirmative obligation to ensure that Rollins was provided with access before making a determination which had the effect of construing the missing evidence in Goldman

13

Sachs' favor, effectively ruling that Goldman Sachs' statements about the policy restrictions were true. The only explanation is that the panel accepted the testimony of Goldman Sachs witnesses who Rollins was unable to rebut without the contents of the compliance records.

For the reasons and circumstances explained above, the Award should be vacated because the panel's conduct prevented Rollins from obtaining a fair hearing by refusing to hear evidence pertinent and material to the controversy and disregarding applicable law. Accordingly, Rollins respectfully requests that the Court enters a judgment in his favor and against Goldman Sachs issuing an order pursuant to 9 U.S.C. § 10 vacating the Award entered in FINRA Case No. 19-02249 dated March 4, 2021; issuing an order directing that the matter be reheard before a new panel; issuing an order that Goldman Sachs produce all documents from its compliance division relating to the Financier, including, without limitation the files and system information referred to by Mr. Golumbic and Mr. Broxup; and awarding Rollins attorneys' fees and the costs of this action and the underlying arbitration; and granting to Rollins such other and further relief as this Court deems just and proper.

Dated:  April 29, 2021                              Respectfully submitted,

                                                    By: s/Seth Redniss

                                                    REDNISS LLC
                                                     Seth Redniss
                                                    375 Greenwich Street
                                                    New York, New York 10013
                                                    Tel: (212) 334-9200
                                                    Fax: (212) 334-9212
                                                    sredniss@redniss.com

                                                    *Attorneys for Christopher Rollins*