UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER ROLLINS,

                Plaintiff,

- against -

GOLDMAN SACHS & CO. LLC, GOLDMAN
SACHS GROUP, INC., GOLDMAN SACHS
INTERNATIONAL, GOLDMAN SACHS
SERVICES LIMITED, and JAMES P. ESPOSITO,

                Defendants

**OPINION & ORDER**

18 Civ. 7162 (ER)

RAMOS, D.J.:

      Christopher Rollins brought this action against his former employer Goldman Sachs Group ("GS Group"), certain of its subsidiaries, and James P. Esposito (collectively, "Goldman Sachs") for violations of the Dodd-Frank Act and related claims. Docs. 1, 17. Rollins, a former managing partner at GS Group, alleges that Goldman Sachs retaliated against him when he blew the whistle on Goldman Sachs' concealment of its anti-money laundering compliance failures associated with a European businessman (the "Financier"). On July 2, 2019, the Court stayed this case while the parties arbitrated Rollins' claims, and the arbitration panel ultimately issued an award ("Award") in favor of Goldman Sachs. Now pending before the Court are Goldman Sachs' motion to lift the stay and confirm the Award, and Rollins' cross-motion to vacate the Award. Docs. 39, 45. For the reasons set forth below, the Award is CONFIRMED, and Rollins' motion to vacate the Award is DENIED.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

      The Court assumes familiarity with the facts and holdings in its July 2, 2019 opinion and order granting Goldman Sachs' motion to compel arbitration. Doc. 28.

### A. Rollins' Employment with Goldman Sachs

In brief, Rollins is a former managing partner of Goldman Sachs & Co. LLC, a company owned by GS Group.  Rollins joined the firm as a trader in the Securities Division in 2000.  Doc. 17 ¶ 33.  He was promoted to Managing Director effective January 1, 2011.  *Id.*  In connection with that promotion, Rollins and the firm executed a Managing Director Agreement (the "Agreement"), which contained an arbitration and choice of law provision.  Docs. 17 at 8, n.3; 22-1 at 5–6.  Specifically, the Agreement provided that any disputes arising out of or relating to Rollins' employment would be settled by arbitration before, and in accordance with the rules of, the Financial Industry Regulatory Authority ("FINRA"), and that the Agreement would be governed by and construed in accordance with New York law.  Doc. 22-1 at 5–6.

In 2013, Rollins accepted a three-year assignment at the firm's London office.  Doc. 17 ¶ 33.  In July 2016, the Financier contacted Rollins about a trade worth more than $400 million.  *Id.* ¶ 41.  Rollins claims that the firm initially would not approve the transaction, but ultimately did.  *Id.* ¶ 44.  In early August 2016, the Financier contacted Rollins again about a new set of potential trades for securities of a European company, and Rollins arranged trades for the company.  *Id.* ¶¶ 44, 48, 49.  When one of Goldman Sachs' clients did not pay for a number of its trades relating to one of those transactions, the company was exposed to an $85 million loss, leading Goldman Sachs' Financial Crimes Compliance division to become concerned that the settlement failures were part of an illegal scheme to execute pre-arranged trades and to open an investigation into Rollins' dealings with the Financier.  *Id.* ¶¶ 6, 56.

Also in August 2016, Rollins decided to transfer permanently to the London office as managing partner for the firm's U.K. affiliate, Goldman Sachs International.  *Id.* ¶¶ 55, 56.  Rollins entered into an employment contract with Goldman Sachs International on September 1,

2016, and his employment contract incorporated the Agreement that Rollins had signed in 2011. Doc. 41-1 at 7–8.

Shortly afterwards, in late September 2016, Goldman Sachs interviewed Rollins as part of an investigation into dealings with the Financier, and also suspended his employment. Doc. 17 ¶¶ 7, 10. Following an investigation and a disciplinary hearing convened under U.K. law and over which Esposito presided, Goldman Sachs International terminated Rollins' employment. *Id.* ¶ 16. The disciplinary decision indicates that the company determined that Rollins negligently entered into the trades and failed to alert compliance officers in advance of doing so. *Id.* ¶ 83. In a November 7, 2016 letter communicating his decision, Esposito wrote to Rollins that, "your misconduct was sufficiently serious to warrant the termination of your employment with the firm," and that while the evidence presented at the hearing did not support that Rollins had contravened instructions from the firm's Financial Crime Compliance division, it did indicate "very serious errors in judgment" in how Rollins handled certain trades connected to the Financier. Doc. 41-6. The letter informed Rollins that his termination would take effect February 5, 2017. *See id.*

Following Rollins' termination, Goldman Sachs filed two regulatory notifications required by law with regulatory bodies in the U.K. and in the United States. Doc. 28 at 5. On March 7, 2017, Goldman Sachs submitted a Form U5 to FINRA, indicating that Goldman Sachs & Co. was terminating Rollins' registration with FINRA because "[a]fter [Goldman Sachs International] restricted a counterparty . . . due to compliance concerns, which were expressed to [Rollins], [he] allowed that same party to introduce and arrange trades a short time later . . . without the approval of or guidance from Compliance or senior management knowledgeable about the relevant concerns." Doc. 41-7 at 2. The Form U5 also indicated that Rollins had left

Goldman Sachs after allegations were made accusing him of violating investment-related statutes, regulations, rules or industry standards of conduct. *Id.* at 4.

### B. Procedural History and Arbitration Proceedings

Rollins brought this action against Goldman Sachs for violations of the Dodd-Frank Act and related claims on August 9, 2018. Doc. 1. On September 27, 2018, Rollins amended his complaint. Doc. 17. On July 2, 2019, the Court granted Goldman Sachs' motion to compel arbitration and stayed the action pending arbitration. Doc. 28.

Rollins thereafter filed a Statement of Claim with FINRA on August 8, 2019, and an Amended Statement of Claim on October 2, 2019. Docs. 40 at 3, 48-7. Rollins' Amended Statement of Claim brought claims for fraud and conspiracy to commit fraud, defamation, and violations of New York Labor Law, and also sought expungement of his FINRA Form U5 and injunctive relief. *See* Doc. 48-7. Both parties participated in a process to select the three lawyers who made up the arbitration panel (the "Panel"). *See* Doc. 41-2. The Panel held an initial prehearing conference on January 28, 2020, at which the parties accepted the composition of the Panel. The Panel also set hearing dates and entered a discovery schedule. *See* Doc. 41-3. Rollins filed a motion to compel the identification of electronically stored information from three Goldman Sachs executives on April 1, 2020. *See* Doc. 41-9 at 1–2. On May 6, 2020, the Chairperson of the Panel ordered Goldman Sachs to provide "the sources from which they gleaned discovery and the relevant sources where data was preserved," pursuant to FINRA discovery rules. Doc. 53-6.

Rollins requested an adjustment to the Panel's scheduling order and leave to file a further discovery motion on August 18, 2020, which was granted on September 8, 2020.[1] Docs. 40 at

---

[1] Rollins' August 18, 2020 letter seeking leave to file a second motion to compel argued that Goldman Sachs had failed to provide records of the company's compliance systems, and therefore "[w]ithout evidence that [the

4

3–4, 41-9.  The parties submitted pre-hearing memoranda on November 18, 2020, and the hearing commenced on December 8, 2020.  The hearing extended over the course of seven days in December 2020, January 2021, and February 2021, and included the testimony of twelve witnesses and over 100 exhibits.  Doc. 40 at 4.  On January 18, 2021, during the pendency of the hearing, Rollins moved for sanctions claiming that Goldman Sachs had failed to produce certain records from the firm's compliance department related to the Financier.  Docs. 46 at 4–7, 48-9 at 1–8.  The Panel denied Rollins' motion, "with the note that the questions raised by [counsel] may be appropriate for closing statement rather than the particular motion that was submitted."  Docs. 46 at 6, 48-6 at 2.

At the conclusion of the evidence on January 26, 2021, the Chair of the Panel asked both parties, "Do you feel that you got a fair hearing?" to which Rollins responded, "Yes."  Representatives of Goldman Sachs also responded in the affirmative.  Docs. 41 ¶ 6, 48-6 at 59.

The parties submitted post-hearing memoranda on February 16, 2021, and the Panel heard closing arguments on February 26, 2021.  Doc. 40 at 4.  Rollins' post-hearing memorandum stressed that Goldman Sachs had accused him of trading for a restricted party but that they had not provided any compliance records indicating that the Financier was a restricted

---

Financier] or his affiliated entities were designated as 'controlled' or otherwise subject to financial crimes compliance ("FCC") restrictions as of August 3, 2016, [Goldman Sachs] cannot prove their defenses or contest the falsity of their various statements that [Rollins] violated FCC or any other restrictions."  Doc. 41-9 at 2.  The parties have not provided any records of Rollins' September 2020 motion to compel, if he in fact did move to compel at that point.  Goldman Sachs indicates that Rollins "did not raise in that motion the discovery issue that he would months later belatedly raise during the hearing."  Doc. 40 at 4.  In his instant moving papers, Rollins states that he did not move to compel documents relating to the company's compliance systems before the hearing because "Goldman Sachs' counsel had represented that all such documents would be produced, there was nothing for Rollins to seek to compel, and the logical conclusion was either that compliance had never had any documentation about the Financier or that, whatever document had once existed, had been destroyed."  Doc. 46 at 4.  Rollins characterizes his August 18, 2020 letter as advising the Panel that substantive motions were appropriate based on Goldman Sachs' failure to preserve records and evidentiary insufficiency, rather than as a motion to compel.  *Id.*  The parties agree that Rollins raised the discovery issue about Goldman Sachs' compliance records in his January 2021 motion for sanctions, at closing arguments, and in his post-hearing memorandum.  *See* Docs. 48-8, 48-9, 53-4.

5

party, and repeated his argument that Goldman Sachs should be sanctioned for widescale discovery abuse. *See* Doc. 48-8.

On March 4, 2021, the Panel issued its award in favor of Goldman Sachs. Doc. 41-4. The Panel's award noted that Rollins had filed a motion for sanctions and also requested sanctions in his post-hearing memorandum, and that "[a]fter due deliberation, the Panel denied [Rollins'] Motion for Sanctions." *See id.* at 2. The Panel denied Rollins' claims in their entirety, along with his request for injunctive relief and for expungement of his FINRA Form U5. *Id.*

On March 5, 2021, Goldman Sachs informed the Court of the arbitration award and requested a pre-motion conference on their anticipated motion to lift the stay and confirm the arbitration award. Docs. 35–37. Goldman Sachs now moves to confirm the arbitration award, and Rollins cross-moves to vacate the award. Docs. 39, 45.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, provides a "streamlined" process for a party seeking "a judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). District courts "treat a petitioner's application to confirm or vacate an arbitral award as akin to a motion for summary judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (internal quotation marks and citation omitted). The award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and citation omitted). "The arbitrator's rationale for an award need not be explained, and . . . [o]nly 'a barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *Id.* (quoting *Landy Michaels Realty Corp. v. Local 32B–32J, Serv.*

*Emps.' Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)).  Confirmation of an arbitration award is thus "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected."  *D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks and citations omitted).  This "severely limited" review promotes the twin goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation.  *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997).

Conversely, "[a] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high."  *D.H. Blair & Co.*, 462 F.3d at 110 (citation omitted).  The party moving to vacate an award bears "the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law."  *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003).  Thus, a party seeking vacatur of an arbitrator's decision "must clear a high hurdle."  *Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010).  Under the FAA, a court may vacate an award:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  In addition, as "judicial gloss" on these specific grounds for vacatur, the Second Circuit has held that "the court may set aside an arbitration award if it was rendered in

7

manifest disregard of the law." *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir. 2011) (internal quotation marks and citation omitted).

### III.   DISCUSSION

Goldman Sachs seeks confirmation of the arbitration award and argues that there is no basis for Rollins to argue that the arbitrators engaged in misconduct. *See* Doc. 39. Rollins argues that the motion should be vacated pursuant to § 10(a)(3) of the FAA because he was denied access to pertinent and material evidence—namely, compliance records indicating that the Financier was on a restricted list, which argument was the subject of his motion for sanctions before the Panel and of his post-trial memorandum. He claims that by denying him access to this evidence, the Panel committed misconduct by preventing him from presenting his case. He also argues that the Panel ignored New York law and FINRA rules, and that the proceeding was fundamentally unfair. *See* Doc. 46.

### A. The Panel Did Not Engage in Misconduct, and the Proceedings Were Not Fundamentally Unfair

"Courts have interpreted section 10(a)(3) to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997). In making evidentiary determinations, an arbitrator "need not follow all the niceties observed by the federal courts." *Id.* (quoting *Bell Aerospace Co. Div. of Textron v. Local 516*, 500 F.2d 921, 923 (2d Cir. 1974)). And not every failure of an arbitrator to receive relevant evidence, such as excluding witness testimony, constitutes misconduct requiring vacatur. *Areca, Inc. v. Oppenheimer & Co.*, 960 F. Supp. 52, 54–55 (S.D.N.Y. 1997) (holding arbitrators have broad discretion under FAA § 10(a)(3) and need not allow every piece of evidence); *see also Eaton Partners, LLC v. Azimuth Cap. Mgmt. IV, Ltd.*, No. 18 Civ. 11112 (ER), 2019 WL 5294934, at *3 (S.D.N.Y. Oct. 18,

8

2019), *aff'd,* 844 F. App'x 441 (2d Cir. 2021).  Ultimately, to meet the standard for vacatur under Section 10(a)(3), any "misconduct must amount to a denial of fundamental fairness of the arbitration proceeding." *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).  To demonstrate arbitral misconduct, the challenging party must show that his "right to be heard has been grossly and totally blocked," *Stifel, Nicolaus & Co. v. Forster*, No. 14 Civ. 6523 (RWS), 2015 WL 509684, at *5 (S.D.N.Y. Feb. 6, 2015) (internal quotation marks and citation omitted), and that this exclusion of evidence prejudiced him, *Rai v. Barclays Capital Inc.*, 739 F. Supp. 2d 364, 372 (S.D.N.Y. 2010), *aff'd,* 456 F. App'x 8 (2d Cir. 2011).

The Court cannot conclude that the Panel's evidentiary determinations, including their decision to deny Rollins' motion for sanctions based on Goldman Sachs' alleged discovery violations, was misconduct requiring vacatur.  First, Goldman Sachs vigorously disputes Rollins' contention that the compliance records were relevant, available evidence, and that they were not cumulative.  Doc. 51 at 9–12.  Goldman Sachs argues that the Panel previously held a hearing on discovery issues, and that it complied with the Panel's directions.  Moreover, as noted above, Rollins moved to compel discovery in April 2020 and had a second opportunity to move to compel in September 2020, but he did not file any motions relating to the compliance records at that time.  *Id.* at 10–11.  Nor did Rollins question any witnesses about the compliance records. *Id.* at 11–12.  Goldman Sachs points to two cases in this District, *Doscher v. Sea Port Grp. Sec., LLC*, No. 15 Civ. 384 (JMF), 2017 WL 6061653 (S.D.N.Y. Dec. 6, 2017), *aff'd,* 752 F. App'x 102 (2d Cir. 2019) and *Finkelstein v. UBS Glob. Asset Mgmt. (US) Inc.*, No. 11 Civ. 0356 (GBD), 2011 WL 3586437 (S.D.N.Y. Aug. 9, 2011), in which courts found that the arbitrator's decisions denying requests for production of certain evidence did not warrant vacatur.  Rollins,

9

by contrast, relies on the Second Circuit's decision in *Tempo Shain* and on *Chevron Transp. Corp. v. Astro Vencedor Compania Naviera, S. A.*, 300 F. Supp. 179, 180–81 (S.D.N.Y. 1969), *order confirmed sub nom. Arbitration Between Chevron Transport Corporation, Petitioner, and Astro Vencedor Compania Naviera, S.A., Respondent*, 1969 WL 173716 (S.D.N.Y. July 24, 1969) (finding that an arbitrator's failure to ensure that ship's logs belonging to one party were available to the other side could constitute sufficient grounds for vacatur of the arbitration award, subject to a showing of prejudice). He claims in his reply brief that the compliance records are in fact dispositive of his claims, because they would indicate whether the Financier was in fact a restricted party, and therefore whether he in fact violated any company policies relevant to preventing financial crimes. Doc. 54 at 2–4.

  The Court agrees with Goldman Sachs. Arbitrators have "great latitude to determine the procedures governing their proceedings and to restrict or control evidentiary proceedings." *Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 408 (S.D.N.Y. 2008); *see also Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 289 (S.D.N.Y. 2007) ("[A]n arbitrator has discretion to admit or reject evidence and determine what materials may be cumulative or irrelevant."). Here, the record does not support Rollins' position that the Panel's evidentiary decisions were so flawed as to be fundamentally unfair, and in fact Rollins himself affirmed that he felt he had had a fair hearing. As Goldman Sachs points out and Rollins does not contest, the *Doscher* and *Finkelstein* cases—both finding that arbitrators' decisions denying plaintiffs access to certain records did not warrant vacatur—are on all fours with this case. The *Doscher* court could not conclude that the panel "abused its 'broad discretion' to manage discovery," where the panel did not mandate that the respondent produce certain tax returns and other documents. 2017 WL 6061653, at *3 (quoting *Finkelstein*, 2011 WL 3586437, at *9). The court noted in that case that

10

the plaintiff had received ample discovery during the course of the arbitration proceedings, the panel had considered prior discovery motions brought by the plaintiff, and counsel raised the discovery issues in closing arguments. *Id.* at *3–4. Moreover, the *Doscher* court specifically found that plaintiff's counsel's concession that the arbitration panel had provided the plaintiff a full and fair opportunity to be heard "underscore[d] the point that [plaintiff] seeks to second guess . . . the [p]anel's decision on the merits rather than its handling of the process leading to that decision[.]" *Id.* at *4. Finally, the *Doscher* court found that plaintiff's § 10(a)(3) argument failed for the independent reason that plaintiff did not establish prejudice. *Id.* at *5. Similarly, in *Finkelstein*, the court found the petitioner "was not denied a fundamentally fair hearing by the arbitration panel's refusal to compel [r]espondents to produce evidence concerning" the value of any parallel investments that the petitioner claimed would have refuted respondents' contention that his trading activities sustained substantial losses, where other profit and loss data was available, and the petitioner had presented his case over fourteen days, in which he had the opportunity to call witnesses and introduce evidence. 2011 WL 3586437, at *9.

These considerations mandate the same result here as in *Doscher* and *Finkelstein*. Rollins does not dispute that Goldman Sachs produced tens of thousands of pages in discovery, or that the Panel considered his discovery motions and arguments, or that he conceded directly after the hearing that it had been fair. *See* Doc. 46. The parties had introduced ample evidence concerning the company's decision to terminate Rollins.[2] He called eleven witnesses over the

---

[2] As Goldman Sachs points out, the decision in *Chevron Transport Corp.* is distinguishable. In that case, the court noted, "[i]t can be said with a fair degree of certainty that perhaps the most important items of documentary evidence in any maritime controversy are the ship's logs." *Chevron Transp. Corp. v. Astro Vencedor Compania Naviera, S. A.,* 300 F. Supp. at 181. Rollins has not made a showing here that the compliance records were essential to the proceedings in the same way as a ship's logs are to maritime disputes, only that they may have been relevant.

seven-day hearing, and the parties introduced over 100 exhibits. *See* Doc. 51 at 13–14. While the compliance records Rollins sought may have been relevant to whether he had breached Goldman Sachs' policies on dealing with a restricted entity under the broad standards of Fed. R. Civ. P. 26, "the issue for this Court is not whether it would have handled the arbitration proceedings in the same way as the [p]anel or reached the same result that the [p]anel reached." *Doscher*, 2017 WL 6061653, at *6. Furthermore, even if Rollins could establish that the Panel had refused to hear pertinent evidence, he cannot show prejudice, since he has not shown that the compliance records were so dispositive to his claims that access to them—as opposed to all the other evidence and testimony before the Panel—would have changed the outcome of the proceedings. *See id.* at *5.

### B. The Panel Did Not Disregard New York Law or the Terms of the Agreement

In the alternative, Rollins argues that the Panel ignored New York law and FINRA rules. In some circumstances, a court may vacate an arbitration award where the arbitrator has manifestly disregarded the law, although such review "is severely limited," *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998) (internal quotation marks and citation omitted), or where the arbitrator has manifestly disregarded the terms of the parties' agreement, *Schwartz*, 665 F.3d at 451–52 (2d Cir. 2011). "Vacating an award for manifest disregard of the law is appropriate only in those exceedingly rare instance[s] where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *Hamilton v. Sirius Satellite Radio, Inc.*, 375 F. Supp. 2d 269, 274 (S.D.N.Y. 2005) (internal quotation marks and citation omitted). "A party seeking vacatur must therefore demonstrate that the arbitrator knew of the relevant principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law

by refusing to apply it." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 217 (2d Cir. 2002); *see also Duferco*, 333 F.3d at 389.

Rollins first contends that "[t]he panel could not have logically applied the law on [defamation, expungement and fraud claims] to these facts—in the absence of any evidence in the record substantiating Goldman Sachs' purported policy—and concluded that their statements were true." Doc. 46 at 12. He also claims that the Panel's withholding of evidence, as described above, constituted failure to enforce FINRA rules against Goldman Sachs, as contemplated by the Agreement. *Id.* However, Rollins' claim based on disregard of New York law is entirely conclusory. He fails to meet any of the necessary elements of showing that the Panel was aware of the relevant principles, that they controlled the outcome of the arbitration, and that the Panel flouted the law. Thus, he does not meet the "heavy burden" of "prov[ing] that the arbitrator was fully aware of the existence of a clearly defined governing legal principle, but refused to apply it." *Doscher*, 2017 WL 6061653, at *6 (quoting *Duferco*, 333 F.3d at 389).

Rollins' claim that the Panel disregarded FINRA rules is likewise unavailing. His arguments that the Panel did not enforce the rules relating to cooperation in discovery, production of documents, and good faith, are "little more than a rehash of his Section 10(a)(3) argument, with [the] additional gloss" of the FINRA rules. *Id.* at *6. However, the FINRA rules apply to parties, rather than to the arbitrator, and "[m]ore fundamentally, FINRA Rules 'are not law.'" *Id.* (quoting *Max Marx Color & Chem. Co. Emps.' Profit Sharing Plan v. Barnes*, 37 F. Supp. 2d 248, 253 (S.D.N.Y. 1999)). To the extent Rollins' argument is that by not enforcing the FINRA rules, the Panel flouted the terms of the Agreement, the Court cannot conclude that the Panel's application of the Agreement was so plainly unreasonable as to mandate vacatur. "An arbitrator's interpretation of the contract terms cannot be overruled, even if the court

disagrees with it, if the Arbitrator provided a 'barely colorable justification' for it." *Eaton Partners*, 2019 WL 5294934, at *5 (quoting *Schwartz*, 665 F.3d at 452). Here, the arbitration proceedings, not least the Panel's May 2020 discovery ruling, make clear that the Panel was applying the FINRA rules contemplated by the Agreement. That alone bars Rollins' argument for vacatur. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 275 (2d Cir. 2015) (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also Oracle Corp. v. Wilson*, 276 F. Supp. 3d 22, 32 (S.D.N.Y. 2017).

In sum, Rollins has not shown either that the Panel engaged in misconduct or that it manifestly disregarded the applicable law.

## IV. CONCLUSION

For the reasons set forth above, Goldman Sachs' motion to confirm the arbitration award is GRANTED, and Rollins' cross-motion to vacate the award is DENIED. The Clerk of Court is respectfully directed to lift the stay, terminate the motions, Docs. 39 and 45, and to close the case.

SO ORDERED.

Dated: April 14, 2022
New York, New York

EDGARDO RAMOS, U.S.D.J.